NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianllp.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianllp.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianllp.com
**SALISIAN LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2686
Telephone:   (213) 622-9100
Facsimile:   (800) 622-9145

MICHELLE A. CHIONGSON, SBN 221740
michelle.chiongson@amerisbank.com
**AMERIS BANK**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiffs
AMERIS BANK and AMERIS BANK d/b/a
BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation; and AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>   Plaintiffs,<br><br>    vs.<br><br>QUICK SHIP LLC, an Ohio limited liability company; CALEB HAWKINS, an individual,<br><br>   Defendants. | Case No.:<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>**1. BREACH OF EQUIPMENT FINANCING AGREEMENT (4 COUNTS)**<br><br>**2. BREACH OF PERSONAL GUARANTY (4 COUNTS)** |

COMPLAINT

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation ("Ameris"), and Plaintiff Ameris Bank, a Georgia state-chartered banking corporation doing business as Balboa Capital Corporation ("Balboa Corp") (collectively with Ameris, "Plaintiffs"), allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Ameris Bank ("Ameris") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation, with its principal place of business in the State of California, County of Orange.

2. Plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Balboa Corp") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation with Balboa Capital Corporation as one if its divisions, which division has its principal place of business in the State of California, County of Orange.

3. Defendant Quick Ship LLC ("QS"), is, and at all times relevant to this action was, an Ohio limited liability company with its principal place of business in the County of Franklin, State of Ohio.

4. Defendant Caleb Hawkins ("Hawkins"), an individual, is, and at all times relevant to this action was, a resident of the County of Licking, State of Ohio, and was a member, officer, director, agent and/or owner of QS. Based on information and belief, including the Driver's License submitted by Hawkins to Plaintiffs, Hawkins is domiciled in Newark, OH 43055. Thus, Hawkins is a citizen of the State of Ohio.

5. Based on research, and upon information and belief, defendant QS has two members – defendant Hawkins and Micah Middleton – both of which are citizens of the State of Ohio. Thus, QS is a citizen of the State of Ohio.

6. Plaintiffs are informed and believe, and thereon allege, that each defendant, directly or indirectly, or through agents or other persons, was engaged with some or all of the other defendants in a joint enterprise for profit and bore such

1

Salisian LLP

other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below.  Plaintiffs are informed and believe and thereon allege that each defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about the foregoing, and that each defendant authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other defendants.

7.    The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California Civil Code Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

8.    Pursuant to each of the Equipment Financing Agreements and the Personal Guaranties described herein, Defendants agreed those documents would be governed by the laws of the State of California. Each of the Equipment Financing Agreements provides, in pertinent part:

> **25. GENERAL.** … THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF CALIFORNIA.  DEBTOR  SUBMITS  TO  THE JURISDICTION  OF  CALIFORNIA  AND  AGRESS THAT  THE  CALIFORNIA  STATE  COURTS  OF ORANGE COUNTY AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,  SANTA  ANA  DIVISION,  SHALL HAVE  EXCLUSIVE  JURISDICTION  OVER  ANY ACTION  OR  PROCEEDING  TO  ENFORCE  THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

*See, e.g.,* Equipment Financing Agreement No. 283029-004, 283029-005

> **31. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division.

*See, e.g.,* Equipment Financing Agreement No. 283029-007, 283029-010

2

Salisian LLP

9.      Jurisdiction.  This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a).

10.      Specifically, as described above, Plaintiffs are each citizens of the States of Georgia and California; QS and Hawkins are each citizens of the State of Ohio.  As such, neither QS nor  Hawkins are citizens of California or Georgia, and there exists complete diversity of citizenship between Plaintiffs and Defendants.  Lastly, as alleged herein, the amount in controversy exceeds $75,000.

11.      Venue.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. § 84(c)(3).

12.      All officers of the Plaintiffs, including all witnesses, and all of the Plaintiffs' documents are located in the State of California, County of Orange.  The transactions at issue in this Action occurred in the State of California, County of Orange.

## FIRST CAUSE OF ACTION
### (Breach of Equipment Financing Agreement No. 1)
### (Against QS)

13.      Balboa Corp alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

14.      Prior to January 2024, Balboa Corp is informed and believes that QS initiated and engaged with Arrow Truck Sales Incorporated ("Equipment Vendor No. 1"), located at 11920 Mosteller Rd, Cincinnati, OH 45241 in order to coordinate the acquisition and financing of certain equipment for its business ("Collateral No. 1").  Equipment Vendor No. 1 worked with QS in the selection of Collateral No. 1 and in coordinating its delivery.

15.      Thereafter, Balboa Corp is informed and believes, and therefore alleges, that Equipment Vendor No. 1 initiated and coordinated submission of QS' electronic credit application to Balboa Corp and other financial institutions. Upon review, QS concluded that Balboa Corp offered agreeable terms to finance

3

Salisian LLP

Collateral No. 1 commensurate with its requirements.  Thereafter, Equipment Vendor No. 1 accumulated and submitted to Balboa Corp the requisite signatories, documentation and financial information from QS to finance Collateral No. 1 being supplied by Equipment Vendor No. 1.

16.     On or about January 22, 2024, QS executed Equipment Financing Agreement No. 283029-004 ("EFA No. 1"), under the terms of which Balboa Corp loaned to QS the sum of Sixty-One Thousand Five Hundred Twenty Dollars and Zero Cents ($61,520.00) to finance Collateral No. 1 for its business.  EFA No. 1 required QS to make sixty (60) monthly payments of $1,336.06, payable on the 21st day of each month beginning February 21, 2024.  A true and correct copy of EFA No. 1 is attached as **Exhibit A** and is incorporated here by reference.

17.     The last payment received by Balboa Corp was credited toward the monthly payment due for January 21, 2026.  Therefore, on or about February 21, 2026, QS breached EFA No. 1 by failing to make the monthly payment due on that date. QS' failure to make timely payments is a default under the terms of EFA No. 1.

18.     In accordance with EFA No. 1, and as a proximate result of QS' default thereunder, Balboa Corp declared the entire balance of the payments under EFA No. 1 to be immediately due and payable to Balboa Corp. Therefore, there became due the sum of $49,434.22.  These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by QS.

19.     Balboa Corp has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 1, except as excused or prevented by the conduct of QS.

20.     As a proximate result of QS' breach of EFA No. 1, Balboa Corp has been damaged in the sum of **$49,434.22**, plus prejudgment interest from February 21, 2026, until the entry of judgment herein.

4

Salisian LLP

21.    Further, under the terms of EFA No. 1, QS promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa Corp in the enforcement of EFA No. 1.  Therefore, Balboa Corp requests the Court award Balboa Corp its reasonable attorneys' fees and costs against QS.

22.    EFA No. 1 also provides Balboa Corp the remedy of possession of Collateral No. 1 and to obtain an order that Balboa Corp may, in accordance with applicable state law, sell the remaining Collateral No. 1 and apply the net proceeds from the sale to the remaining loan balance.  Alternatively, if possession cannot be had, Balboa Corp is entitled to recover the value of Collateral No. 1.

## SECOND CAUSE OF ACTION

### (Breach of Personal Guaranty No. 1)

### (Against Hawkins)

23.    Balboa Corp alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

24.    Concurrent with the execution of EFA No. 1, and in order to induce Balboa Corp to enter into EFA No. 1 with QS, Hawkins personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa Corp under the terms of EFA No. 1 ("Guaranty No. 1").  A true and correct copy of the written Guaranty No. 1 signed by Hawkins is attached as **Exhibit B** and incorporated herein by reference.

25.    Balboa Corp has performed all the terms, conditions, and covenants required to be performed by Balboa Corp under the terms of Guaranty No. 1, except as excused or prevented by the conduct of Hawkins.

26.    Following a default by QS under the terms of EFA No. 1, Balboa Corp demanded Hawkins make the payments required under EFA No. 1.  Hawkins failed to meet Guaranty No. 1 obligations and make the payments required under EFA No. 1.

Salisian LLP

27.    Pursuant to the terms of Guaranty No. 1, the sum of **$49,434.22**, plus prejudgment interest from February 21, 2026, is due and payable to Balboa Corp from Hawkins.  This Complaint, in addition to previous demands, shall constitute further demand upon Hawkins to pay the entire indebtedness due and owing from QS to Balboa Corp under the terms of EFA No. 1.

28.    Under the terms of Guaranty No. 1, Hawkins promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa Corp in the enforcement of EFA No. 1 and Guaranty No. 1.  Therefore, Balboa Corp requests the Court award Balboa Corp its reasonable attorneys' fees and costs as against Hawkins.

## THIRD CAUSE OF ACTION

### (Breach of Equipment Financing Agreement No. 2)

### (Against QS)

29.    Balboa Corp alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

30.    Prior to April 2024, Balboa Corp is informed and believes that QS initiated and engaged with Equipment Vendor No. 1 in order to coordinate the acquisition and financing of certain equipment for its business ("Collateral No. 2"). Equipment Vendor No. 1 worked with QS in the selection of Collateral No. 2 and in coordinating its delivery.

31.    Thereafter, Balboa Corp is informed and believes, and therefore alleges, that Equipment Vendor No. 1 initiated and coordinated submission of QS' electronic credit application to Balboa Corp and other financial institutions.  Upon review, QS concluded that Balboa Corp offered agreeable terms to finance Collateral No. 2 commensurate with its requirements.  Thereafter, Equipment Vendor No. 1 accumulated and submitted to Balboa Corp the requisite signatories, documentation and financial information from QS to finance Collateral No. 2 being supplied by Equipment Vendor No. 1.

32.     On or about April 22, 2024, QS executed Equipment Financing Agreement No. 283029-005 ("EFA No. 2"), under the terms of which Balboa Corp loaned QS the sum of Thirty-Eight Thousand Eight Hundred Forty-Five Dollars and Ninety-Nine Cents ($38,845.99) to finance Collateral No. 2 for its business. EFA No. 2 required QS to make sixty (60) monthly payments of $864.11, payable on the 24th day of each month beginning May 24, 2024.  A true and correct copy of EFA No. 2 is attached as **Exhibit C** and is incorporated here by reference.

33.     The last payment received by Balboa Corp was credited toward the monthly payment due for January 24, 2026.  Therefore, on or about February 24, 2026, QS breached EFA No. 2 by failing to make the monthly payment due on that date.  QS' failure to make timely payments is a default under the terms of EFA No. 2.

34.     QS' default thereunder, Balboa Corp declared the entire balance of the payments under EFA No. 2 to be immediately due and payable to Balboa Corp. Therefore, there became due the sum of $34,564.40.  These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by QS.

35.     Balboa Corp has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 2, except as excused or prevented by the conduct of QS.

36.     As a proximate result of QS' breach of EFA No. 2, Balboa Corp has been damaged in the total sum of **$34,564.40**, plus prejudgment interest from February 24, 2026, until the entry of judgment herein.

37.     Further, under the terms of EFA No. 2, QS promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa Corp in the enforcement of EFA No. 2.  Therefore, Balboa Corp requests the Court award Balboa Corp its reasonable attorneys' fees and costs as against QS.

38.     EFA No. 2 also provides Balboa Corp the remedy of possession of Collateral No. 2 and to obtain an order that Balboa Corp may, in accordance with

7

applicable state law, sell the remaining Collateral No. 2 and apply the net proceeds from the sale to the remaining loan balance.  Alternatively, if possession cannot be had, Balboa Corp is entitled to recover the value of Collateral No. 2.

## FOURTH CAUSE OF ACTION

### (Breach of Personal Guaranty No. 2)

### (Against Hawkins)

39.     Balboa Corp alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

40.     Concurrent with the execution of EFA No. 2, and in order to induce Balboa Corp to enter into EFA No. 2 with QS, Hawkins personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa Corp under the terms of EFA No. 2 ("Guaranty No. 2").  A true and correct copy of the written Guaranty No. 2 signed by Hawkins is attached as **Exhibit D** and incorporated herein by reference.

41.     Balboa Corp has performed all the terms, conditions, and covenants required to be performed by Balboa Corp under the terms of Guaranty No. 2, except as excused or prevented by the conduct of Hawkins.

42.     Following a default by QS under the terms of EFA No. 2, Balboa Corp demanded Hawkins make the payments required under EFA No. 2.  Hawkins failed to meet Guaranty No. 2 obligations and make the payments required under EFA No. 2.

43.     Pursuant to the terms of Guaranty No. 2, the sum of **$34,564.40**, plus prejudgment interest from February 24, 2026, is due and payable to Balboa Corp from Hawkins.  This Complaint, in addition to previous demands, shall constitute further demand upon Hawkins to pay the entire indebtedness due and owing from QS to Balboa Corp under the terms of EFA No. 2.

44.     Under the terms of Guaranty No. 2, Hawkins promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa Corp in the enforcement of

EFA No. 2 and Guaranty No. 2.  Therefore, Balboa Corp requests the Court award Balboa Corp its reasonable attorneys' fees and costs as against Hawkins.

## FIFTH CAUSE OF ACTION

### (Breach of Equipment Financing Agreement No. 3)

### (Against QS)

45.    Ameris alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

46.    Prior to July 2024, Ameris is informed and believes that QS initiated and engaged with Ritchie Bros. Auctioneers (America Inc.) ("Equipment Vendor No. 2"), located at 4000 Pine Lake Road Lincoln, NE 68516 in order to coordinate the acquisition and financing of certain equipment for its business ("Collateral No. 3").  Equipment Vendor No. 2 worked with QS in the selection of Collateral No. 3 and in coordinating its delivery.

47.    Thereafter, Ameris is informed and believes, and therefore alleges, that Equipment Vendor No. 2 initiated and coordinated submission of QS's electronic credit application to Ameris and other financial institutions.  Upon review, QS concluded that Ameris offered agreeable terms to finance Collateral No. 3 commensurate with its requirements.  Thereafter, Equipment Vendor No. 2 accumulated and submitted to Ameris the requisite signatories, documentation and financial information from QS to finance Collateral No. 4 being supplied by Equipment Vendor No. 2.

48.    On or about July 30, 2024, QS executed Equipment Financing Agreement No. 283029-007 ("EFA No. 3"), under the terms of which Ameris loaned QS the sum of Thirty-Six Thousand Five Hundred Ten Dollars and Eighty-Seven Cents ($36,510.87) to finance Collateral No. 3 for its business.  EFA No. 3 required QS to make forty-eight (48) monthly payments of $941.87, payable on the 30th day of each month beginning August 30, 2024.  A true and correct copy of EFA No. 3 is attached as **Exhibit E** and is incorporated here by reference.

9

Salisian LLP

49. The last payment received by Ameris was credited toward the monthly payment due for January 30, 2026. Therefore, on or about February 28, 2026, QS breached EFA No. 3 by failing to make the monthly payment due on that date. QS' failure to make timely payments is a default under the terms of EFA No. 3.

50. QS' default thereunder, Ameris declared the entire balance of the payments under EFA No. 3 to be immediately due and payable to Ameris. Therefore, there became due the sum of $29,197.97. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by QS.

51. Ameris has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 3, except as excused or prevented by the conduct of QS.

52. As a proximate result of QS' breach of EFA No. 3, Ameris has been damaged in the total sum of **$29,197.97**, plus prejudgment interest from February 28, 2026, until the entry of judgment herein.

53. Further, under the terms of EFA No. 3, QS promised to pay all costs, including reasonable attorneys' fees, incurred by Ameris in the enforcement of EFA No. 3. Therefore, Ameris requests the Court award Ameris its reasonable attorneys' fees and costs as against QS.

54. EFA No. 3 also provides Ameris the remedy of possession of Collateral No. 3 and to obtain an order that Ameris may, in accordance with applicable state law, sell the remaining Collateral No. 3 and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Ameris is entitled to recover the value of Collateral No. 3.

## SIXTH CAUSE OF ACTION

### (Breach of Personal Guaranty No. 3)

### (Against Hawkins)

55. Ameris alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

10

Salisian LLP

COMPLAINT

56. Concurrent with the execution of EFA No. 3, and in order to induce Ameris to enter into EFA No. 3 with QS, Hawkins personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Ameris under the terms of EFA No. 3 ("Guaranty No. 3"). A true and correct copy of the written Guaranty No. 3 signed by Hawkins is attached as **Exhibit F** and incorporated herein by reference.

57. Ameris has performed all the terms, conditions, and covenants required to be performed by Ameris under the terms of Guaranty No. 3, except as excused or prevented by the conduct of Hawkins.

58. Following a default by QS under the terms of EFA No. 3, Ameris demanded Hawkins make the payments required under EFA No. 3. Hawkins failed to meet Guaranty No. 3 obligations and make the payments required under EFA No. 3.

59. Pursuant to the terms of Guaranty No. 3, the sum of **$29,197.97**, plus prejudgment interest from February 28, 2026, is due and payable to Ameris from Hawkins. This Complaint, in addition to previous demands, shall constitute further demand upon Hawkins to pay the entire indebtedness due and owing from QS to Ameris under the terms of EFA No. 3.

60. Under the terms of Guaranty No. 3, Hawkins promised to pay all costs, including reasonable attorneys' fees, incurred by Ameris in the enforcement of EFA No. 3 and Guaranty No. 3. Therefore, Ameris requests the Court award Ameris its reasonable attorneys' fees and costs as against Hawkins.

## SEVENTH CAUSE OF ACTION

### (Breach of Equipment Financing Agreement No. 4)

### (Against QS)

61. Ameris alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

11

COMPLAINT

Salisian LLP

62.     Prior to October 2025, Ameris is informed and believes that QS initiated and engaged with Ironplanet, Inc. – MPT ("Equipment Vendor No. 3"), located at 5667 Gibraltar Dr, Pleasanton, CA 94588 in order to coordinate the acquisition and financing of certain equipment for its business ("Collateral No. 4"). Equipment Vendor No. 3 worked with QS in the selection of Collateral No. 4 and in coordinating its delivery.

63.     Thereafter, Ameris is informed and believes, and therefore alleges, that Equipment Vendor No. 3 initiated and coordinated submission of QS' electronic credit application to Ameris and other financial institutions.  Upon review, QS concluded that Ameris offered agreeable terms to finance Collateral No. 4 commensurate with its requirements.  Thereafter, Equipment Vendor No. 3 accumulated and submitted to Ameris the requisite signatories, documentation and financial information from QS to finance Collateral No. 4 being supplied by Equipment Vendor No. 3.

64.     On or about October 31, 2025, QS executed Equipment Financing Agreement No. 283029-010 ("EFA No. 4"), under the terms of which Ameris loaned QS the sum of Thirty-Two Thousand One Hundred Fifty-Three Dollars and Zero Cents ($32,153.00) to finance Collateral No. 4 for its business.  EFA No. 4 required QS to make forty-eight (48) monthly payments of $854.92, payable on the 5th day of each month beginning December 5, 2025.  A true and correct copy of EFA No. 4 is attached as **Exhibit G** and is incorporated here by reference.

65.     The last payment received by Ameris was credited toward the monthly payment due for January 5, 2026.  Therefore, on or about February 5, 2026, QS breached EFA No. 4 by failing to make the monthly payment due on that date.  QS' failure to make timely payments is a default under the terms of EFA No. 4.

66.     QS' default thereunder, Ameris declared the entire balance of the payments under EFA No. 4 to be immediately due and payable to Ameris.

12

Salisian LLP

Therefore, there became due the sum of $40,181.24. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by QS.

67. Ameris has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 4, except as excused or prevented by the conduct of QS.

68. As a proximate result of QS' breach of EFA No. 4, Ameris has been damaged in the total sum of **$40,181.24**, plus prejudgment interest from February 5, 2026, until the entry of judgment herein.

69. Further, under the terms of EFA No. 4, QS promised to pay all costs, including reasonable attorneys' fees, incurred by Ameris in the enforcement of EFA No. 4. Therefore, Ameris requests the Court award Ameris its reasonable attorneys' fees and costs as against QS.

70. EFA No. 4 also provides Ameris the remedy of possession of Collateral No. 4 and to obtain an order that Ameris may, in accordance with applicable state law, sell the remaining Collateral No. 4 and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Ameris is entitled to recover the value of Collateral No. 4.

## EIGHTH CAUSE OF ACTION

### (Breach of Personal Guaranty No. 4)

### (Against Hawkins)

71. Ameris alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

72. Concurrent with the execution of EFA No. 4, and in order to induce Ameris to enter into EFA No. 4 with QS, Hawkins personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Ameris under the terms of EFA No. 4 ("Guaranty No. 4"). A true and correct copy of the written Guaranty No. 4 signed by Hawkins is attached as **Exhibit H** and incorporated herein by reference.

13

COMPLAINT

Salisian LLP

73. Ameris has performed all the terms, conditions, and covenants required to be performed by Ameris under the terms of Guaranty No. 4, except as excused or prevented by the conduct of Hawkins.

74. Following a default by QS under the terms of EFA No. 4, Ameris demanded Hawkins make the payments required under EFA No. 4. Hawkins failed to meet Guaranty No. 4 obligations and make the payments required under EFA No. 4.

75. Pursuant to the terms of Guaranty No. 4, the sum of **$40,181.24**, plus prejudgment interest from February 5, 2026, is due and payable to Ameris from Hawkins. This Complaint, in addition to previous demands, shall constitute further demand upon Hawkins to pay the entire indebtedness due and owing from QS to Ameris under the terms of EFA No. 4.

76. Under the terms of Guaranty No. 4, Hawkins promised to pay all costs, including reasonable attorneys' fees, incurred by Ameris in the enforcement of EFA No. 4 and Guaranty No. 4. Therefore, Ameris requests the Court award Ameris its reasonable attorneys' fees and costs as against Hawkins.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**On the First and Second Causes of Action:**

1. The sum of $49,434.22;

2. Prejudgment interest from February 21, 2026, to the date of entry of judgment;

3. An order to recover possession of Collateral No. 1 which is the subject of EFA No. 1, or if Collateral No. 1 cannot be delivered, for its reasonable value according to proof;

4. Reasonable attorneys' fees and costs;

5. Costs of suit as provided by law; and

14

Salisian LLP

6. Such other and further relief that the Court considers proper.

**On the Third and Fourth Causes of Action:**

1. The sum of $34,564.40;

2. Prejudgment interest from February 24, 2026, to the date of entry of judgment;

3. An order to recover possession of Collateral No. 2 which is the subject of EFA No. 2, or if Collateral No. 2 cannot be delivered, for its reasonable value according to proof;

4. Reasonable attorneys' fees and costs;

5. Costs of suit as provided by law; and

6. Such other and further relief that the Court considers proper.

**On the Fifth and Sixth Causes of Action:**

1. The sum of $29,197.97;

2. Prejudgment interest from February 28, 2026, to the date of entry of judgment;

3. An order to recover possession of Collateral No. 3 which is the subject of EFA No. 3, or if Collateral No. 3 cannot be delivered, for its reasonable value according to proof;

4. Reasonable attorneys' fees and costs;

5. Costs of suit as provided by law; and

6. Such other and further relief that the Court considers proper.

**On the Seventh and Eighth Causes of Action:**

1. The sum of $40,181.24;

2. Prejudgment interest from February 5, 2026, to the date of entry of judgment;

3. An order to recover possession of Collateral No. 4 which is the subject of EFA No. 4, or if Collateral No. 4 cannot be delivered, for its reasonable value according to proof;

15

COMPLAINT

4.   Reasonable attorneys' fees and costs;

5.   Costs of suit as provided by law; and

6.   Such other and further relief that the Court considers proper.


DATED: May 11, 2026                    **SALISIAN LLP**

By: _____

Jared T. Densen
Neal S. Salisian
Patty W. Chen

*Attorneys for Plaintiff*
AMERIS BANK and AMERIS BANK d/b/a
BALBOA CAPITAL CORPORATION

COMPLAINT

Salisian LLP