# EXHIBIT "A"

DocuSign Envelope ID: B5B3A98E-8F61-4096-82B1-A2FE770E1A40    Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 2 of 51    Page ID #:19

**rb RITCHIE BROS.**
Financial Services

**BALBOA CAPITAL**

Agreement #: 283029-004

**EQUIPMENT FINANCING  AGREEMENT**

**Debtor Information:**

| | |
|---|---|
| Debtor Name: | QUICK SHIP LLC |
| Billing Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Physical Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Phone Number: | 6144257417 |
| State of Formation: | OH |
| Contact Person: | Caleb Hawkins |
| Contact Email: | c.hawkins@quickshipdelivery.com |
| Federal Tax ID: | X ▮▮▮▮▮▮ |

**Commercial Transaction/Business Use Only**

**Creditor:** Balboa Capital Corporation

575 Anton Blvd, 12th Floor
Costa Mesa, CA 92626

Phone Number: 8553317237

Contact Phone: Customer Service

Contact Email: rbrar@rbfinance.com

This is an Equipment Financing Agreement ("**Agreement**"). "**Creditor**" means Balboa Capital Corporation and is also referred to as "**we**", "**us**" and "**our**". "**Debtor**" means the entity or individual identified above and is also referred to as "**you**" and "**your**".

**Schedule of Collateral:**

| Qty | Model Year | Make | Model | Serial No. | Equipment Cost |
|---|---|---|---|---|---|
| 1 | 2019 | Freightliner | CASCADEVO1 | 1FUJHHDR9KLKN7558 | $59,950.00 |
| Equipment Location: 785 Frebis Ave, Columbus, OH, 43206, USA | | | | | |
| | | | | | $0.00 |
| Equipment Location: | | | | | |
| | | | | | $0.00 |
| Equipment Location: | | | | | |
| | | | | | $59950 |

**Cost of Transaction Based On:**

| | |
|---|---|
| Equipment Cost: | $ 59,950.00 |
| Auction Admin Fees: | $ 375.00 |
| On-Site Property Insurance: | $ |
| Cargo Insurance (incl. taxes if any): | $ |
| Extended Service Contract: | $ |
| Sub-Total Before Taxes: | $ 60,325.00 |
| Sales/Use taxes: | $ 0.00 |
| Sales/Use Taxes: | $ 0.00 |
| Sales/Use Taxes: | $ |
| Total Equipment Invoice: | $ 60,325.00 |

**Cost of Transaction Based On (Cont'd):**

| | |
|---|---|
| Total Equipment Invoice: | $ 60,325.00 |
| Less Downpayment | $ 0.00 |
| Balance Owing: | $ 60,325.00 |
| Loan Admin Fee: | $ 1,195.00 |
| Life Insurance: | $ |
| Disability Insurance: | $ |
| Original Principal Balance: | $ 61,520.00 |
| Interest Rate (% per annum): | 10.95 % |
| Cost of Credit | _____ % |

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**Schedule of Monthly Payment Terms: "Term" <u>60</u> months.**

60 payments @ $1336.06

Original Term:          60 months

**Commencement & Payment Due Dates:**

This Agreement will commence on the date you sign our Disbursement Authorization form or any other form acceptable to us ("Commencement Date"), authorizing us to pay ARROW TRUCK SALES INC   for the Equipment.

Your first Monthly Payment will be due and payable on the date that is <u>30</u> days after the Commencement Date and each other Monthly Payment will be due and payable on the same day of each succeeding month (each a **"Payment Date"**).

02/21/2024

**IMPORTANT: Before you sign this Agreement, please read it carefully (including the additional Terms and Conditions contained in the pages following this page) because only those terms in writing are enforceable.  No other terms or oral promises not contained in this written Agreement may be legally enforced.  You may change the terms of this Agreement only by another written agreement signed by us.  By signing this Agreement, you agree to be legally bound by all of the Terms.  This Agreement is the complete and exclusive statement between you and us.  You certify that all the information contained in this Agreement and your Application is correct and complete.  This Agreement is not binding on us until we sign it.  You agree that this Agreement is entered into by you for business purposes and not for personal, family or household purposes.**

**Debtor:** QUICK SHIP LLC

By: **X**

Caleb Hawkins                    Managing Member
Print Name & Title

Date: **X**  1/22/2024

This Agreement shall not become binding upon us until accepted in writing at our offices in Irvine, CA by our authorized officer.

**Creditor:**

**Balboa Capital Corporation**

By:

Vice President
1/23/2024
Date

Page 2 of 4

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

DocuSign Envelope ID: B503A98F-8F61-4096-82B1-A2FE770E1A40    Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 4 of 51    Page ID #:21



RITCHIE BROS.
Financial Services

BALBOA CAPITAL

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # 283029-004

### TERMS OF EQUIPMENT FINANCING AGREEMENT

Debtor and Creditor agree as follows

**1. SECURITY INTEREST.** Debtor hereby grants Creditor a security under the Uniform Commercial Code in the above property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Debtor if its obligations thereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. **DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL. 2. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT.** Debtor shall repay creditor the above Monthly Payments in the number of monthly installments indicated above. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment Creditor will charge Debtor shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above. All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's Receipt of Creditor's invoice therefor. Advance payments, which are the first and last Monthly Payments, may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not commenced, the advanced payments, documentation fee and security deposit may be retained by Creditor to compensate Creditor for its processing costs, labor, and other expenses. **3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND CREDITOR OR AFFECT DEBTORS DUTY TO PAY THE MONTHLY PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER. **4. PREPAYMENT OPTION:** DEBTOR WILL HAVE THE RIGHT TO PREPAY IN FULL, BUT NOT IN PART, ALL OUTSTANDING AMOUNTS UNDER THIS AGREEMENT (THE "PREPAYMENT") PRIOR TO THE END OF THE SCHEDULED PAYMENT TERM. ANY SUCH PREPAYMENT SHALL BE MADE IN THE AMOUNT OF THE THEN CORRESPONDING "PREPAYMENT AMOUNT". THE PREPAYMENT AMOUNT SHALL BE AN AMOUNT EQUAL TO: (A) ALL SCHEDULED LOAN PAYMENTS AND ALL OTHER SUMS DUE BUT UNPAID UNDER THE AGREEMENT AT THE TIME OF PREPAYMENT, PLUS (B) THE PRESENT VALUE OF ALL SCHEDULED LOAN PAYMENTS TO BECOME DUE DURING THE REMAINDER OF THE AGREEMENT TERM (DISCOUNTED TO PRESENT VALUE AT THE INTEREST RATE APPLICABLE TO THIS AGREEMENT), PLUS (C) THE CORRESPONDING "PREPAYMENT FEE". THE PREPAYMENT FEE SHALL EQUAL ONE PERCENT OF THE THEN OUTSTANDING PRINCIPAL BALANCE UNDER THIS AGREEMENT FOR EACH FULL TWELVE MONTHS REMAINING IN THE AGREEMENT TERM AT THE TIME THE PREPAYMENT AMOUNT IS RECEIVED BY US. **5. FINANCING.** THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. SEE PREVIOUS AND FOLLOWING PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT. **CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMACE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THE AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This agreement is effective only upon execution by an authorized officer of Creditor following Debtor's execution hereof, and upon execution Creditor shall fund the Equipment Cost/Advanced. Debtor hereby authorizes Creditor to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Creditor reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral. **6. LOCATION; INSPECTION; USE.** Debtor shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, in Debtor's possession and control at the Collateral Location or at such other location to which such Item may been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Creditor may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements. **7. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent. **8. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity. **9. LOSS AND DAMAGE; CASUALTY VALUE.** In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Equipment to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Equipment, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment. **10. PAYMENT OF OBLIGATIONS.** Payment of all Obligations under this Agreement shall be made by electronically withdrawing funds from the bank account listed in this paragraph, or on which Debtors deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from this account on which Debtor's deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement on or after the due date of Debtor's Monthly Payment, for scheduled Monthly Payments or other amounts due and owing at the time under this Agreement. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is authorized to debit the account on which Debtors deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. However, Debtor agrees that Creditor, or its assignees, has the right, but not the obligation, to electronically withdraw funds from the bank account on which Debtor's deposit check was drawn, the account specified below, or any other account from which Debtor paid any Obligation under this Agreement to pay for any unpaid Monthly Payment or other amounts due and owing at the time under this Agreement. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Account Number: **X** ▓▓▓▓▓▓▓▓▓     ABA / Routing Number: **X** ▓▓▓▓▓▓▓▓     DS  CH

Financial Institution Name: **X** ▓▓▓▓▓▓▓▓     Initials: **X** CH _____

**11. TITLING.** Debtor is the owner of the Equipment and Debtor guarantees that physical tilting of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Agreement shall bear license plates and the title there to shall be registered in the name of Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt within 30 days of when Debtor receives it from the titling authority. Debtor to indemnify Creditor from any damage or loss incurred from Debtor's failure to comply with this section. Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling, plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within in the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor further agrees to pay a one-time $350.00 titling if Creditor has not receive the correct transferred title of DMV receipt in its office after written demand. **12. TAXES AND FEES.** Debtor will file all tax returns for each Vehicle and pay when due all taxes which may be assessed (including (Federal) Heavy Vehicle Use Tax, personal property tax, fines and penalties) and fees (including Vehicle licensing, registration and inspection fees) relating to the Equipment or this Agreement. If Creditor pay any of the above for Debtor, Debtor agrees to reimburse Creditor and to pay Creditor a processing fee for each payment Creditor makes on Debtors behalf. In addition, Debtor also agrees to pay Creditor any filing fees prescribed by the Uniform Commercial Code or other law and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. Debtor further agrees to pay Creditor a documentation fee on or before the date the first payment is due and a termination fee. **13. INSURANCE.** Debtor agrees to maintain at all times during the term of this Agreement, at Debtor's expense, "Special Form" property insurance, with an insurance provider acceptable to Creditor, protecting the Equipment for its full replacement value, naming Creditor as a loss payee on a "Lender's Loss Payable" endorsement; and, if requested, public liability insurance], in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance on the commencement date of this Equipment Finance Agreement or of any subsequent written request. **14. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall reimburse Creditor the cost of such performance. **15. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Equipment, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim. **16. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of incompetency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of Debtors,

DS  CH

Initials: **X** CH _____

Page 3 of 4                                                                                          RBEFA1252

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**Agreement # 283029-004**

including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a loan, lease or agreement providing financial accommodation with a third party; (i) expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Agreement; or (h) creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise. **17. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Equipment without notice or demand to Debtor; (c) take possession of and/or render unusable any of all Equipment, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Equipment at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell, lease or otherwise dispose of any Vehicles, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may if permitted by law bid and become the purchaser at any such sale. **18. EXPENSES.** Debtor shall pay Creditor its costs and expenses including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed. Debtor shall reimburse Creditor for all UCC search and filing fees and any other costs related to this Agreement incurred by Creditor. **19. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against any Vehicle or assign any of Debtor's obligations hereunder. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties. **20. PERSONAL PROPERTY.** As between the parties the Equipment shall at all times be deemed personal. Debtor will provide Creditor any landlord, mortgagee or other real property waivers requested by Creditor as to the real property where any Equipment is or is to be located. **21. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within Five (5) days of when due, Debtor agree to pay us (a) twelve percent (12%) of each such late payment (to the extent permitted by law) (b) amounts Debtor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month. **22. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1) Creditor shall provide Debtor such termination statements related to the Equipment as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such termination statement. **23. ADDITIONAL DOCUMENTS.** Debtor further shall furnish Creditor (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Creditor may request. **24. NOTICES.** Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Debtor shall promptly notify Creditor of any change in Debtor's address. **25. GENERAL.** This agreement constitutes the entire agreement of the parties as to its subject matter and shall not be amended, altered or changed except by a written agreement signed by the parties. Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this agreement requires, the neutral includes the masculine or feminine and the singular includes the plural. If there is more than one Debtor named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this agreement are solely for the convenience of the parties and are not an aid in the interpretation. THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF CALIFORNIA. DEBTOR SUBMITS TO THE JURISDICTION OF CALIFORNIA AND AGRESS THAT THE CALIFORNIA STATE COURTS OF ORANGE COUNTY AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION, SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY ACTION OR PROCEEDING TO ENFORCE THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this agreement. The obligations of Debtor shall survive the release of the security interest in the Equipment. **26. DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS: (a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY CREDITOR AT ITS OFFICES IN IRVINE, CA, WHERE THIS AGREEMENT IS MADE TO BE ENTERED INTO AND PERFORMED SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (b) EACH REPRESENTATION PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NOTWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT ALL EQUIPMENT SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

**27. Counterparts and Facsimile Signatures. If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will not be binding on Creditor. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our ink signed signature and shall be marked "Original". To the extent that any Vehicle Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our ink signed signature and is marked "Original". DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

| (CREDITOR) | (DEBTOR) |
|---|---|
| **BALBOA CAPITAL CORPORATION**<br>**575 Anton Blvd. 12th Floor**<br>**Costa Mesa, CA 92626** | **QUICK SHIP LLC**<br>**785 Frebis Ave**<br>**Columbus, OH, 43206, USA** |
| DocuSigned by:<br>By: _Matthew Cevallos_<br>B573B763AAF0442...<br>Vice President<br><br>Date: 1/23/2024 | DocuSigned by:<br>By: X _CALEB HAWKINS_<br>2F3F06BF29D34EE...<br><br>Name: Caleb Hawkins<br><br>Title: Managing Member<br><br>Date: X 1/22/2024     Home Phone: X ████ |

Page 4 of 4

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

DocuSign Envelope ID: B593A98F-8F61-4096-82B1-A2FE770E1A40

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 6 of 51    Page ID #:23

# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Equipment"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No. 283029-004 dated as of  **01/22/2024** (the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Equipment is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Equipment in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Equipment, as appropriate.  The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Total Advance as follows:

| Payee Name | Amount |
| --- | --- |
| ARROW TRUCK SALES INC | $60,325.00 |
|  | $0.00 |
|  | $0.00 |
| Ritchie Bros. Financial Services, Ltd. | $1,195.00 |
| Ritchie Bros. Financial Services, Ltd. | $ |
| Ritchie Bros. Financial Services, Ltd. | $ |
| Total Amount to be Disbursed: | $61,520.00 |

**EQUIPMENT - SEE EQUIPMENT DESCRIPTION ON THE AGREEMENT AND/OR ON THE ATTACHED EXHIBIT A-1.**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable installment payment obligation under the Agreement will commence.  The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Equipment of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Equipment or any similar or dissimilar occurrence as also set forth in the Agreement.

Date Equipment accepted by Debtor *("Acceptance Date")*  **01/23/2024**                           (Date)

I hereby authorize _____ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement # 283029-004 in my absence.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

**Debtor Name: QUICK SHIP LLC**

By: **X** *CALEB HAWKINS* _____

Name: Caleb Hawkins

**Title:** Managing Member

**Date: X**  1/22/2024

VFA 791B

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



**Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment**

This is an addendum (the "Addendum") to Equipment Finance Agreement No. 283029-004 (the "Agreement"). Entered into between QUICK SHIP LLC ("You", "your", or Debtor") and Balboa Capital Corporation ("Us", "We", "Our", or "Creditor").

A. You negotiated with your supplier(s), ARROW TRUCK SALES INC, Richie Bros Financial Services Ltd, ("Supplier"), to provide the equipment (the "Equipment") described in the Equipment Finance Agreement. Per your request, we will advance all or a substantial portion of the total cost of the Equipment (the "Equipment Payment") to Supplier. We will advance the Equipment Payment to Supplier, however, only after confirming herein that You have made an unconditional commitment to fulfill all payment and non-payment Obligations in the Agreement and this Addendum.

B. We will rely on Your Obligations under the Agreement and this Addendum in making the Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement.

Each party hereby agrees that the Agreement is amended as follows:

1. Although the Equipment has not been delivered to You, You hereby request and authorize us to advance the Equipment Payment to Supplier.

2. To induce Us to make any Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement, YOU AGREE THAT YOUR OBLIGATIONS UNDER THE AGREEMENT HEREBY IMMEDIATELY COMMENCE and that the first payment under the Agreement will be due and owing on the date indicated on Our initial invoice to You. Subsequent Monthly Payments will be due and owing on the same date thereafter as reflected in Our invoices. YOU FURTHER AGREE THAT THE AGREEMENT IS NON-CANCELABLE AND THAT YOU WILL TIMELY PERFORM ALL OF YOUR OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING MAKING THE MONTHLY PAYMENTS , WITHOUT CLAIM OF SET-OFF, EVEN IF: (a) SOME OR ALL OF THE EQUIPMENT IS NOT DELIVERED AND/OR INSTALLED; (b) THE EQUIPMENT IS DELIVERED BUT NOT ON A TIMELY BASIS OR NOT INSTALLED ON A TIMELY BASIS; AND/OR (C) THE EQUIPMENT DOES NOT, AT THE TIME OF DELIVERY OR THERAFTER, OPERATE PROPERLY OR THERE IS ANY OTHER NONCONFORMANCE IN THE EQUIPMENT OR IN ANY SERVICE. You further agree that you will have no claim or defense against Us and that we shall be entitled to enforce the Agreement against You.

3. The sections of the Agreement governing acceptance of the Equipment and the timing of payments, to the extent inconsistent with the Addendum, are hereby amended to be consistent with paragraphs 1 and 2 above. The original of this Addendum shall be that copy which bears a facsimile or original of Your signature and which bears Our original signature. All other terms and conditions of the Agreement are hereby reaffirmed.

| Balboa Capital Corporation | QUICK SHIP LLC |
|---|---|
| DocuSigned by: | DocuSigned by: |
| By: *Matthew Cevallos* | By: X *CALEB HAWKINS* |
| B573B763AAF0442... | 2F3F06BF29D34EE... |
| Signature | Signature |
| | Caleb Hawkins — Managing Member |
| Vice President | Name — Title |
| Title of Signer | |
| Date Accepted: 1/23/2024 | Date: X 1/22/2024 |

UNCONDITIONAL GUARANTY

The undersigned jointly and severally if more than one, unconditionally guarantee(s) that I will timely perform all obligations under the above referenced Agreement. The undersigned also waive(s) any notification if the Debtor is in default and consent(s) to any extensions or modifications granted to the Debtor In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring Creditor to proceed against Debtor, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law and jury trial waiver as stated in the Agreement and agrees to pay all costs and expenses, including attorney's fees, incurred by Creditor related to this guaranty and the Agreement.

Caleb Hawkins

| DocuSigned by: | ntor | Guarantor |
|---|---|---|
| X *CALEB HAWKINS* | | |
| 2F3F06BF29D34EE... | Individually | X: Individually |
| Signature | | Signature |
| Date: X 1/22/2024 | | Date: X |

| Guarantor | Guarantor |
|---|---|
| X: Individually | X: Individually |
| Signature | Signature |
| Date: X | Date: X |

ECEFA843

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

DocuSign Envelope ID: B593A98F-8F61-4096-82B1-A2FE770E1A40        Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS     Document 1-1     Filed 05/11/26     Page 8 of 51     Page ID #:25

**rb RITCHIE BROS.**
Financial Services

**BALBOA CAPITAL**

CREDITOR:  BALBOA CAPITAL CORPORATION

Equipment Financing Agreement Number: 283029-004

## VEHICLE ADDENDUM – I-A

ADDENDUM TO EQUIPMENT FINANCING AGREEMENT OF EQUIPMENT DATED _____

THE TERM "VEHICLE" AS USED HEREIN SHALL BE DEEMED TO REFER
TO AN ITEM OF EQUIPMENT AS DEFINED IN THE EQUIPMENT FINANCING AGREEMENT

HEAVY VEHICLE USE TAX (Federal Highway Use Tax): Debtor will file all returns and pay all (Federal) Heavy Vehicle Use Tax, which may be assessed or due on each Vehicle and Debtor agrees to indemnify Creditor for such taxes. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

OBLIGATION TO PAY MISCELLANEOUS CHARGES: Debtor agrees to pay all storage charges, parking charges and fines. Debtor will pay any fees (including Vehicle registration and inspection fees) or taxes which may be imposed with respect to each Vehicle by any governmental authority. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

TITLING AND REGISTRATION: Debtor is the owner of the Equipment and Debtor guarantees that physical titling of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Equipment Financing Agreement shall bear license plates and the title thereto shall be registered in the name of Debtor. Annual registration and license fees shall be paid by Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt. This will be provided within 30 days of when Debtor receives it from the titling authority. If Debtor fails to do so, Debtor will be in default of this Agreement. Debtor further agrees to pay a month to month unobtained titling fee if we have not received the correct transferred title in our office and agree to indemnify Creditor from any damage or loss we incur from Debtor's failure.

X [CH] (initial) Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling, plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within in the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor also grants Creditor security interest in the equipment if this agreement is deemed a secured transaction and Debtor authorizes Creditor to record a UCC-1.

INSURANCE: Debtor shall procure and maintain in full force and effect at all times, at Debtor's expense, with a responsible insurance company acceptable to Creditor, insurance coverage for the maximum insurable value of the equipment insuring Debtor and Creditor, as their interests may appear, against liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the equipment, with minimum coverage per occurrence as follows:

Minimum limits for each vehicle to be maintained by Debtor:

| | | | |
|---|---|---|---|
| Bodily injury liability per individual | $500,000.00 | Fire, Theft and Comprehensive | Full Value |
| Bodily injury liability per accident | $500,000.00 | Collision Value Deductible (deductible part to be paid by Debtor) | |
| Property damage liability | $250,000.00 | | |
| **OR** Combined Single Limits | $750,000.00 | | |

Such continuous insurance coverage shall be provided for the period from delivery of the first item of equipment to Debtor to the date of termination of this Equipment Financing Agreement. Debtor shall provide Creditor copies of the insurance policies or other evidence of the maintenance of such insurance. Creditor **must** be named on the policy as **"additional insured"** and **"loss payee"**.

The following shall constitute an additional Event of Default under the Equipment Financing Agreement: "expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Equipment Financing Agreement".

EXCEPT IN THE EVENT OF DIRECT CONFLICT BETWEEN THIS ADDENDUM AND THE ABOVE REFERENCED EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SUPPLEMENT SAID EQUIPMENT FINANCING AGREEMENT AND SHALL NOT BE DEEMED TO MODIFY, REPLACE, OR CANCEL ANY PROVISION OF SAID EQUIPMENT FINANCING AGREEMENT, IN THE EVENT OF CONFLICT BETWEEN THIS ADDENDUM AND SAID EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

| | |
|---|---|
| **CREDITOR:** | **DEBTOR:** |
| **BALBOA CAPITAL CORPORATION** | **QUICK SHIP LLC** |
| By: *Matthew Cevallos*  — B573B763AAF0442... | By: X *CALEB HAWKINS*  — 2F3F06BF29D34EE... |
| Title: Vice President | Name: Caleb Hawkins |
| Date: 1/23/2024 | Title: Managing Member |
| | Date: X  1/22/2024 |

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:58 AM.     EFA255C

DocuSign Envelope ID: B583A98E-8E61-4096-82B1-A2FE770E1A40



## ARROW
### TRUCK SALES

Exhibit A1

**RETAIL INVOICE**

ATS - CINCINNATI
11920 MOSTELLER ROAD
CINCINNATI, OH   45241

513-772-3233

**INVOICE NO:** 213444
**PAGE:** 1
**DATE:** 1/18/2024
**SAL#:** 254762

**PURCHASE BY:**

QUICK SHIP LLC
785 Frebis Ave
COLUMBUS, OH   43206

**CUSTOMER#:** 1033416
**SALES PERSON:** MATTHEW QUICK

| STOCK | MAKE | YEAR | UNIT# | MODEL | SERIAL NO. | LOCATION | PRICE |
|-------|------|------|-------|-------|------------|----------|-------|
| 262483 | FL | 2019 | 19064 | CASCADEVO1 | 1FUJHHDR9KLKN7558 | OH,CIN | 59,950.00 |

SHIP TO:
QUICK SHIP LLC
785 FREBIS AVE
COLUMBUS OH 43206

| | |
|---|---|
| Sub-Total | 59,950.00 |
| Tradein | |
| Payoff | |
| Net allowance | |
| Down Payment | |
| Inspec Fee * | 250.00 |
| Doc Fee * | 75.00 |
| License & Title * | 50.00 |
| Sales Tax | |
| Balance Due | 60,325.00 |

By _____

ACCEPTED _____
PURCHASER

* This charge represents cost and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

# EXHIBIT "B"

DocuSign Envelope ID: B593A98E-8F61-4096-82B1-A2FE770E1A40

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

# PERSONAL GUARANTY

### Equipment Financing Agreement # 283029-004

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

X _CALEB HAWKINS_
DocuSigned by:
2F3F06BF29D34EE...

Caleb Hawkins                                        X  1/22/2024
**Name**                                             **Date**

███████████████

**Home Street Address, City, State, Zip Code**

████████                        ████████

**Social Security Number**                   **Phone Number**

EFA251

The original document is owned by Balboa Capital Corporation and this copy was created on Jan 23, 2024 11:33:59 AM.

# EXHIBIT "C"

DocuSign Envelope ID: 13B0A448-700E-42EA-AA74-264D4C1E5BD2
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 13 of 51    Page ID #:30

**RITCHIE BROS.**
Financial Services

**BALBOA** CAPITAL

Agreement #: 283029-005

**EQUIPMENT FINANCING  AGREEMENT**

**Debtor Information:**

| | |
|---|---|
| Debtor Name: | QUICK SHIP LLC |
| Billing Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Physical Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Phone Number: | 6144257417 |
| State of Formation: | OH |
| Contact Person: | Caleb Hawkins |
| Contact Email: | c.hawkins@quickshipdelivery.com |
| Federal Tax ID: | X ▮▮▮▮▮▮▮ |

Commercial Transaction/Business Use Only

**Creditor:** Balboa Capital Corporation

575 Anton Blvd, 12th Floor
Costa Mesa, CA 92626

Phone Number: 8553317237

Contact Phone: Customer Service

Contact Email: jmua@rbfinance.com

This is an Equipment Financing Agreement ("**Agreement**"). "**Creditor**" means Balboa Capital Corporation and is also referred to as "**we**", "**us**" and "**our**". "**Debtor**" means the entity or individual identified above and is also referred to as "**you**" and "**your**".

**Schedule of Collateral:**

| Qty | Model Year | Make | Model | Serial No. | Equipment Cost |
|---|---|---|---|---|---|
| 1 | 2019 | Freightliner | CASCADIA TRUCK-TRACTOR | 1FUGGBDV5KLKE7709 | $36,999.00 |
| Equipment Location: 785 Frebis Ave, Columbus, OH, 43206, USA | | | | | |
| | | | | | $0.00 |
| Equipment Location: | | | | | |
| | | | | | $0.00 |
| Equipment Location: | | | | | |
| | | | | | $36999 |

**Cost of Transaction Based On:**

| | |
|---|---|
| Equipment Cost: | $ 36,999.00 |
| Auction Admin Fees: | $ 2,217.00 |
| On-Site Property Insurance: | $ |
| Cargo Insurance (incl. taxes if any): | $ |
| Extended Service Contract: | $ |
| Sub-Total Before Taxes: | $ 39,216.00 |
| Sales/Use taxes: | $ |
| Sales/Use Taxes: | $ |
| Sales/Use Taxes: | $ |
| Total Equipment Invoice: | $ 39,216.00 |

**Cost of Transaction Based On (Cont'd):**

| | |
|---|---|
| Total Equipment Invoice: | $ 39,216.00 |
| Less Downpayment | $ 1,842.00 |
| Balance Owing: | $ 37,374.00 |
| Loan Admin Fee: | $ 995.00 |
| Life Insurance: | $ 368.11 |
| Disability Insurance: | $ 108.88 |
| Original Principal Balance: | $ 38,845.99 |
| Interest Rate (% per annum): | 12 % |
| Cost of Credit | _____ % |

RBEFA1252

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:43 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**Schedule of Monthly Payment Terms: "Term" <u>60</u> months.**

60 payments @ $864.11

Original Term:             60 months

**Commencement & Payment Due Dates:**

This Agreement will commence on the date you sign our Disbursement Authorization form or any other form acceptable to us ("Commencement Date"), authorizing us to pay Arrow Truck Sales Inc   for the Equipment.

Your first Monthly Payment will be due and payable on the date that is <u>30</u> days after the Commencement Date and each other Monthly Payment will be due and payable on the same day of each succeeding month (each a **"Payment Date"**).

5/24/2024

**IMPORTANT: Before you sign this Agreement, please read it carefully (including the additional Terms and Conditions contained in the pages following this page) because only those terms in writing are enforceable.  No other terms or oral promises not contained in this written Agreement may be legally enforced.  You may change the terms of this Agreement only by another written agreement signed by us.  By signing this Agreement, you agree to be legally bound by all of the Terms.  This Agreement is the complete and exclusive statement between you and us.  You certify that all the information contained in this Agreement and your Application is correct and complete.  This Agreement is not binding on us until we sign it.  You agree that this Agreement is entered into by you for business purposes and not for personal, family or household purposes.**

**Debtor:** QUICK SHIP LLC

By: **X** _CALEB HAWKINS_
2F3F06BF29D34EE...

Caleb Hawkins                          Managing Member
Print Name & Title

Date: **X**  4/22/2024

This Agreement shall not become binding upon us until accepted in writing at our offices in Irvine, CA by our authorized officer.

**Creditor:**

**Balboa Capital Corporation**

By: _Lauren Schott_
B573B763AAF0442...

Vice President
4/25/2024
Date

Page 2 of 4

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:43 PM.

DocuSign Envelope ID: 13B0A448-700E-42EA-AA74-264D4C1E5BD2

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



**RITCHIE BROS.**
Financial Services

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # 283029-005

**TERMS OF EQUIPMENT FINANCING
AGREEMENT**

Debtor and Creditor agree as follows

**1. SECURITY INTEREST.** Debtor hereby grants Creditor a security under the Uniform Commercial Code in the above property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Debtor if its obligations thereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. **DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL. 2. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT.** Debtor shall repay creditor the above Monthly Payments in the number of monthly installments indicated above. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment Creditor will charge Debtor shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's Receipt of Creditor's invoice therefor. Advance payments, which are the first and last Monthly Payments, may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not commenced, the advanced payments, documentation fee and security deposit may be retained by Creditor to compensate Creditor for its processing costs, labor, and other expenses. **3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND CREDITOR OR AFFECT DEBTORS DUTY TO PAY THE MONTHLY PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER. **4. PREPAYMENT OPTION:** DEBTOR WILL HAVE THE RIGHT TO PREPAY IN FULL, BUT NOT IN PART, ALL OUTSTANDING AMOUNTS UNDER THIS AGREEMENT (THE "PREPAYMENT") PRIOR TO THE END OF THE SCHEDULED PAYMENT TERM. ANY SUCH PREPAYMENT SHALL BE MADE IN THE AMOUNT OF THE THEN CORRESPONDING "PREPAYMENT AMOUNT". THE PREPAYMENT AMOUNT SHALL BE AN AMOUNT EQUAL TO: (A) ALL SCHEDULED LOAN PAYMENTS AND ALL OTHER SUMS DUE BUT UNPAID UNDER THE AGREEMENT AT THE TIME OF PREPAYMENT, PLUS (B) THE PRESENT VALUE OF ALL SCHEDULED LOAN PAYMENTS TO BECOME DUE DURING THE REMAINDER OF THE AGREEMENT TERM (DISCOUNTED TO PRESENT VALUE AT THE INTEREST RATE APPLICABLE TO THIS AGREEMENT), PLUS (C) THE CORRESPONDING "PREPAYMENT FEE". THE PREPAYMENT FEE SHALL EQUAL ONE PERCENT OF THE THEN OUTSTANDING PRINCIPAL BALANCE UNDER THIS AGREEMENT FOR EACH FULL TWELVE MONTHS REMAINING IN THE AGREEMENT TERM AT THE TIME THE PREPAYMENT AMOUNT IS RECEIVED BY US. **5. FINANCING.** THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. SEE PREVIOUS AND FOLLOWING PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT. **CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THE AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This agreement is effective only upon execution by an authorized officer of Creditor following Debtor's execution hereof, and upon execution Creditor shall fund the Equipment Cost/Advanced. Debtor hereby authorizes Creditor to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Creditor reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral. **6. LOCATION; INSPECTION; USE.** Debtor shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor. Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Creditor may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements. **7. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent. **8. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity. **9. LOSS AND DAMAGE; CASUALTY VALUE.** In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Equipment to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Equipment, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment. **10. PAYMENT OF OBLIGATIONS.** Payment of all Obligations under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtors deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from this account on which Debtor's deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement on or after the due date of Debtor's Monthly Payment, for scheduled Monthly Payments or other amounts due and owing at the time under this Agreement. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is authorized to debit the account on which Debtors deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. However, Debtor agrees that Creditor, or its assignees, has the right, but not the obligation, to electronically withdraw funds from the bank account on which Debtor's deposit check was drawn, the account specified below, or any other account from which Debtor paid any Obligation under this Agreement to pay for any unpaid Monthly Payment or other amounts due and owing at the time under this Agreement. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Account Number: **X** [redacted]    ABA / Routing Number: **X** [redacted]

Financial Institution Name: **X** [redacted]    Initials: **X** _CH_

**11. TITLING.** Debtor is the owner of the Equipment and Debtor guarantees that physical tilting of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Agreement shall bear license plates and the title there to shall be registered in the name of Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt within 30 days of when Debtor receives it from the titling authority. Debtor to indemnify Creditor from any damage or loss incurred from Debtor's failure to comply with this section. Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling, plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within in the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor further agrees to pay a one-time $350.00 titling if Creditor has not receive the correct transferred title of DMV receipt in its office after written demand. **12. TAXES AND FEES.** Debtor will file all tax returns for each Vehicle and pay when due all taxes which may be assessed (including (Federal) Heavy Vehicle Use Tax, personal property tax, fines and penalties) and fees (including Vehicle licensing, registration and inspection fees) relating to the Equipment or this Agreement. If Creditor pay any of the above for Debtor, Debtor agrees to reimburse Creditor and to pay Creditor a processing fee for each payment Creditor makes on Debtors behalf. In addition, Debtor also agrees to pay Creditor any filing fees prescribed by the Uniform Commercial Code or other law and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. Debtor further agrees to pay Creditor a documentation fee on or before the date the first payment is due and a termination fee. **13. INSURANCE.** Debtor agrees to maintain at all times during the term of this Agreement, at Debtor's expense, "Special Form" property insurance, with an insurance provider acceptable to Creditor, protecting the Equipment for its full replacement value, naming Creditor as a loss payee on a "Lender's Loss Payable" endorsement; and, if requested, public liability insurance], in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance on the commencement date of this Equipment Finance Agreement or of any subsequent written request. **14. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall reimburse Creditor the cost of such performance. **15. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Equipment, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim. **16. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any other agreement between Debtor and Creditor; (c) death or judicial declaration of incompetency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of Debtors,

Initials: **X** _CH_

Page 3 of 4

RBEFA1252

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:43 PM.

DocuSign Envelope ID: 13B0A448-700E-42EA-AA74-264D4C1E5BD2

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8.26-cv-01142-ADS     Document 1-1     Filed 05/11/26     Page 16 of 51     Page ID #:33

**Agreement # 283029-005**

including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) to a guarantor of other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a loan, lease or agreement providing financial accommodation with a third party; (i) expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Agreement; or (h) creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise. **17. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Equipment without notice or demand to Debtor; (c) take possession of and/or render unusable any or all Equipment, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Equipment at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell, lease or otherwise dispose of any Vehicles, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may if permitted by law bid and become the purchaser at any such sale. **18. EXPENSES.** Debtor shall pay Creditor its costs and expenses including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed. Debtor shall reimburse Creditor for all UCC search and filing fees and any other costs related to this Agreement incurred by Creditor. **19. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against any Vehicle or assign any of Debtor's obligations hereunder. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties **20. PERSONAL PROPERTY.** As between the parties the Equipment shall at all times be deemed personal. Debtor will provide Creditor any landlord, mortgagee or other real property waivers requested by Creditor as to the real property where any Equipment is or is to be located. **21. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within Five (5) days of when due, Debtor agree to pay us (a) twelve percent (12%) of each such late payment (to the extent permitted by law) (b) amounts Debtor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month. **22. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1) Creditor shall provide Debtor such termination statements related to the Equipment as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such termination statement. **23. ADDITIONAL DOCUMENTS.** Debtor further shall furnish Creditor (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Creditor may request. **24. NOTICES.** Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Debtor shall promptly notify Creditor of any change in Debtor's address. **25. GENERAL.** This agreement constitutes the entire agreement of the parties as to its subject matter and shall not be amended, altered or changed except by a written agreement signed by the parties. Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this agreement requires, the neutral includes the masculine or feminine and the singular includes the plural. If there is more than one Debtor named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this agreement are solely for the convenience of the parties and are not an aid in the interpretation. THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF CALIFORNIA. DEBTOR SUBMITS TO THE JURISDICTION OF CALIFORNIA AND AGRESS THAT THE CALIFORNIA STATE COURTS OF ORANGE COUNTY AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION, SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY ACTION OR PROCEEDING TO ENFORCE THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this agreement. The obligations of Debtor shall survive the release of the security interest in the Equipment. **26. DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS: (a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY CREDITOR AT ITS OFFICES IN IRVINE, CA, WHERE THIS AGREEMENT IS MADE TO BE ENTERED INTO AND PERFORMED SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (b) EACH REPRESENTATION PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NOTWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT ALL EQUIPMENT SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

**27. Counterparts and Facsimile Signatures. If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will not be binding on Creditor. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our ink signed signature and shall be marked "Original". To the extent that any Vehicle Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our ink signed signature and is marked "Original". DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

| (CREDITOR) | (DEBTOR) |
|---|---|
| **BALBOA CAPITAL CORPORATION** | **QUICK SHIP LLC** |
| **575 Anton Blvd. 12th Floor** | **785 Frebis Ave** |
| **Costa Mesa, CA 92626** | **Columbus, OH, 43206, USA** |
| DocuSigned by: *Lauren Schott* | DocuSigned by: *CALEB HAWKINS* |
| By: _____ B573B763AAF0442... | By: X _____ 2F3F06BF29D34EE... |
| Vice President | |
| | Name: Caleb Hawkins |
| Date: 4/25/2024 | Title: Managing Member |
| | Date: X 4/22/2024      Home Phone: X _____ |

Page 4 of 4

DocuSign Envelope ID: 13B9A448-700E-42EA-AA74-264D4C1E5BD2

**RITCHIE BROS.**
Financial Services

**BALBOA**
CAPITAL

# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Equipment"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No. 283029-005 dated as of   4/22/2024
(the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Equipment is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Equipment in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Equipment, as appropriate.  The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Total Advance as follows:

| Payee Name | Amount |
| --- | --- |
| Arrow Truck Sales Inc | $37,374.00 |
| | $0.00 |
| | $0.00 |
| Ritchie Bros. Financial Services, Ltd. | $995.00 |
| Ritchie Bros. Financial Services, Ltd. | $368.11 |
| Ritchie Bros. Financial Services, Ltd. | $108.88 |
| Total Amount to be Disbursed: | $38,845.99 |

**EQUIPMENT - SEE EQUIPMENT DESCRIPTION ON THE AGREEMENT AND/OR ON THE ATTACHED EXHIBIT A-1.**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable installment payment obligation under the Agreement will commence.  The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Equipment of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Equipment or any similar or dissimilar occurrence as also set forth in the Agreement.

Date Equipment accepted by Debtor *("Acceptance Date")*  4/24/2024                    (Date)

I hereby authorize _____ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement # 283029-005 in my absence.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

**Debtor Name: QUICK SHIP LLC**

By: **X** *CALEB HAWKINS*
2F3F06BF29D34EE...

**Name:** Caleb Hawkins

**Title:** Managing Member

**Date:** **X**  4/22/2024

VFA 791B

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:43 PM.

DocuSign Envelope ID: 13B9A448-700E-42EA-AA74-264D4C1E5BD2    Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 18 of 51    Page ID #:35

RITCHIE BROS.
Financial Services

BALBOA
CAPITAL

**Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment**

This is an addendum (the "Addendum") to Equipment Finance Agreement No. 283029-005 (the "Agreement"). Entered into between QUICK SHIP LLC ("You", "your", or Debtor") and Balboa Capital Corporation ("Us", "We", "Our", or "Creditor").

A.    You negotiated with your supplier(s), Arrow Truck Sales Inc, Richie Bros Financial Services Ltd, ("Supplier"), to provide the equipment (the "Equipment") described in the Equipment Finance Agreement. Per your request, we will advance all or a substantial portion of the total cost of the Equipment (the "Equipment Payment") to Supplier. We will advance the Equipment Payment to Supplier, however, only after confirming herein that You have made an unconditional commitment to fulfill all payment and non-payment Obligations in the Agreement and this Addendum.

B.    We will rely on Your Obligations under the Agreement and this Addendum in making the Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement.

Each party hereby agrees that the Agreement is amended as follows:

1.    Although the Equipment has not been delivered to You, You hereby request and authorize us to advance the Equipment Payment to Supplier.

2.    To induce Us to make any Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement, YOU AGREE THAT YOUR OBLIGATIONS UNDER THE AGREEMENT HEREBY IMMEDIATELY COMMENCE and that the first payment under the Agreement will be due and owing on the date indicated on Our initial invoice to You. Subsequent Monthly Payments will be due and owing on the same date thereafter as reflected in Our invoices. YOU FURTHER AGREE THAT THE AGREEMENT IS NON-CANCELABLE AND THAT YOU WILL TIMELY PERFORM ALL OF YOUR OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING MAKING THE MONTHLY PAYMENTS , WITHOUT CLAIM OF SET-OFF, EVEN IF: (a) SOME OR ALL OF THE EQUIPMENT IS NOT DELIVERED AND/OR INSTALLED; (b) THE EQUIPMENT IS DELIVERED BUT NOT ON A TIMELY BASIS OR NOT INSTALLED ON A TIMELY BASIS; AND/OR (C) THE EQUIPMENT DOES NOT, AT THE TIME OF DELIVERY OR THERAFTER, OPERATE PROPERLY OR THERE IS ANY OTHER NONCONFORMANCE IN THE EQUIPMENT OR IN ANY SERVICE. You further agree that you will have no claim or defense against Us and that we shall be entitled to enforce the Agreement against You.

3.    The sections of the Agreement governing acceptance of the Equipment and the timing of payments, to the extent inconsistent with the Addendum, are hereby amended to be consistent with paragraphs 1 and 2 above. The original of this Addendum shall be that copy which bears a facsimile or original of Your signature and which bears Our original signature. All other terms and conditions of the Agreement are hereby reaffirmed.

| Balboa Capital Corporation | QUICK SHIP LLC |
|---|---|
| **Creditor** | **Debtor** |
| By: *Lauren Schott* | By: X *CALEB HAWKINS* |
| B573B763AAF0442... | 2F3F06BF29D34EE... |
| Signature | Signature |
| | Caleb Hawkins    Managing Member |
| Vice President | |
| Title of Signer | Name    Title |
| Date Accepted: 4/25/2024 | Date: X 4/22/2024 |

UNCONDITIONAL GUARANTY

The undersigned jointly and severally if more than one, unconditionally guarantee(s) that I will timely perform all obligations under the above referenced Agreement. The undersigned also waive(s) any notification if the Debtor is in default and consent(s) to any extensions or modifications granted to the Debtor In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring Creditor to proceed against Debtor, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law and jury trial waiver as stated in the Agreement and agrees to pay all costs and expenses, including attorney's fees, incurred by Creditor related to this guaranty and the Agreement.

Caleb Hawkins

| **Guarantor** | **Guarantor** |
|---|---|
| X *CALEB HAWKINS* | X: |
| 2F3F06BF29D34EE... | |
| Signature    Individually | Signature    Individually |
| Date: X 4/22/2024 | Date: X |

| **Guarantor** | **Guarantor** |
|---|---|
| X: | X: |
| Signature    Individually | Signature    Individually |
| Date: X | Date: X |

ECEFA843

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:43 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



## RBFS Document Specialist Signature



DocuSigned by:

*Juan Mua*

4D3C83502CE8461...

Name: Juan Mua
Email: jmua@rbfinance.com
Phone:

Titled deal, Balboa to title, dealer confirmed the wire takes ACH, asset current miles are 183,378
Customer to pick at dealer's location



RBFS Attachments – (Attachments can be viewed below)





The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:44 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**RITCHIE BROS.**
Financial Services

**BALBOA** CAPITAL

CREDITOR:  BALBOA CAPITAL CORPORATION

Equipment Financing Agreement Number:  283029-005

## VEHICLE ADDENDUM – I-A

ADDENDUM TO EQUIPMENT FINANCING AGREEMENT OF EQUIPMENT DATED _____4/25/2024_____

THE TERM "VEHICLE" AS USED HEREIN SHALL BE DEEMED TO REFER
TO AN ITEM OF EQUIPMENT AS DEFINED IN THE EQUIPMENT FINANCING AGREEMENT

HEAVY VEHICLE USE TAX (Federal Highway Use Tax): Debtor will file all returns and pay all (Federal) Heavy Vehicle Use Tax, which may be assessed or due on each Vehicle and Debtor agrees to indemnify Creditor for such taxes. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

OBLIGATION TO PAY MISCELLANEOUS CHARGES: Debtor agrees to pay all storage charges, parking charges and fines. Debtor will pay any fees (including Vehicle registration and inspection fees) or taxes which may be imposed with respect to each Vehicle by any governmental authority. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

TITLING AND REGISTRATION: Debtor is the owner of the Equipment and Debtor guarantees that physical titling of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Equipment Financing Agreement shall bear license plates and the title thereto shall be registered in the name of Debtor. Annual registration and license fees shall be paid by Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt. This will be provided within 30 days of when Debtor receives it from the titling authority. If Debtor fails to do so, Debtor will be in default of this Agreement. Debtor further agrees to pay a month to month unobtained titling fee if we have not received the correct transferred title in our office and agree to indemnify Creditor from any damage or loss we incur from Debtor's failure.

X_____ (initial) Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling, plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within in the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor also grants Creditor security interest in the equipment if this agreement is deemed a secured transaction and Debtor authorizes Creditor to record a UCC-1.

INSURANCE: Debtor shall procure and maintain in full force and effect at all times, at Debtor's expense, with a responsible insurance company acceptable to Creditor, insurance coverage for the maximum insurable value of the equipment insuring Debtor and Creditor, as their interests may appear, against liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the equipment, with minimum coverage per occurrence as follows:

Minimum limits for each vehicle to be maintained by Debtor:

| | | | |
|---|---|---|---|
| Bodily injury liability per individual | $500,000.00 | Fire, Theft and Comprehensive | Full Value |
| Bodily injury liability per accident | $500,000.00 | Collision Value Deductible (deductible part to be paid by Debtor) | |
| Property damage liability | $250,000.00 | | |
| | | | |
| **OR** Combined Single Limits | $750,000.00 | | |

Such continuous insurance coverage shall be provided for the period from delivery of the first item of equipment to Debtor to the date of termination of this Equipment Financing Agreement. Debtor shall provide Creditor copies of the insurance policies or other evidence of the maintenance of such insurance. Creditor **must** be named on the policy as **"additional insured"** and **"loss payee"**.

The following shall constitute an additional Event of Default under the Equipment Financing Agreement: "expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Equipment Financing Agreement".

EXCEPT IN THE EVENT OF DIRECT CONFLICT BETWEEN THIS ADDENDUM AND THE ABOVE REFERENCED EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SUPPLEMENT SAID EQUIPMENT FINANCING AGREEMENT AND SHALL NOT BE DEEMED TO MODIFY, REPLACE, OR CANCEL ANY PROVISION OF SAID EQUIPMENT FINANCING AGREEMENT, IN THE EVENT OF CONFLICT BETWEEN THIS ADDENDUM AND SAID EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

| **CREDITOR:**<br>**BALBOA CAPITAL CORPORATION** | **DEBTOR:**<br>**QUICK SHIP LLC** |
|---|---|
| By: _Lauren Schott_<br>B573B763AAF0442... | By: X _CALEB HAWKINS_<br>2F3F06BF29D34EE... |
| Title: Vice President | Name: Caleb Hawkins |
| Date:  4/25/2024 | Title: Managing Member |
| | Date: X  4/22/2024 |

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:44 PM.   EFA255C

# ARROW
## TRUCK SALES

**RETAIL INVOICE**

ATS - CINCINNATI
11920 MOSTELLER ROAD
CINCINNATI, OH  45241

513-772-3233

| | |
|---|---|
| **INVOICE NO:** | 215069 |
| **PAGE:** | 1 |
| **DATE:** | 4/19/2024 |
| **SAL#:** | 256088 |

**PURCHASE BY:**

QUICK SHIP LLC
785 Frebis Ave
COLUMBUS, OH  43206

**CUSTOMER#:** 1033416
**SALES PERSON:** MATTHEW QUICK

| STOCK | MAKE | YEAR | UNIT# | MODEL | SERIAL NO. | LOCATION | PRICE |
|---|---|---|---|---|---|---|---|
| 264212 | FL | 2019 | R93138 | CASCADIA | 1FUGGBDV5KLKE7709 | OK,OKL | 36,999.00 |

SHIP TO:
ARROW TRUCK SALES
11920 MOSTELLER ROAD
CINCINNATI OH 45241

| | |
|---|---|
| Sub-Total | 36,999.00 |
| Tradein | |
| Payoff | _____ |
| Net allowance | |
| Down Payment | 1,842.00- |
| Inspec Fee * | 250.00 |
| Doc Fee * | 75.00 |
| License & Title * | 50.00 |
| Sales Tax | |
| Freight | 1,842.00 |
| Balance Due | 37,374.00 |

By _____     ACCEPTED _____

PURCHASER

* This charge represents cost and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

# EXHIBIT "D"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

# PERSONAL GUARANTY

### Equipment Financing Agreement # 283029-005

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

X _CALEB HAWKINS_
DocuSigned by:
2F3F06BF29D34EE...

| | |
|---|---|
| Caleb Hawkins | X 4/22/2024 |
| **Name** | **Date** |
| ▮ | |
| **Home Street Address, City, State, Zip Code** | |
| ▮ | ▮ |
| **Social Security Number** | **Phone Number** |

EFA251

The original document is owned by Balboa Capital Corporation and this copy was created on Apr 25, 2024 03:03:44 PM.

# EXHIBIT "E"

Docusign Envelope ID: 938C665E-74A5-49B9-8243-3F72E6D77FAC

**RITCHIE BROS.**
Financial Services

THIS IS A COPY
This is a copy view of an Alternative Copy held by the designated custodian


BALBOA CAPITAL
A DIVISION OF AMERIS BANK

**Agreement #: 283029-007**

**EQUIPMENT FINANCING  AGREEMENT**

### Debtor Information:

| | |
|---|---|
| Debtor Name: | QUICK SHIP LLC |
| Billing Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Physical Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Phone Number: | 6144257417 |
| State of Formation: | OH |
| Contact Person: | Caleb Hawkins |
| Contact Email: | c.hawkins@quickshipdelivery.com |
| Federal Tax ID: | X ▮▮▮▮▮ |

Commercial Transaction/Business Use Only

**Creditor:** Ameris Bank

575 Anton Blvd, Suite 1080
Costa Mesa, CA 92626

Phone Number: 8553317237

Contact Phone: Customer Service

Contact Email: stuazon@rbfinance.com

This is an Equipment Financing Agreement ("**Agreement**"). "**Creditor**" means Ameris Bank and is also referred to as "**we**", "**us**" and "**our**". "**Debtor**" means the entity or individual identified above and is also referred to as "**you**" and "**your**".

### Schedule of Collateral:

| Qty | Model Year | Make | Model | Serial No. | Equipment Cost |
|---|---|---|---|---|---|
| | | | **SEE ATTACHED EXHIBIT A** | | |
| Equipment Location: 785 Frebis Ave, Columbus, OH, 43206, USA | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### Cost of Transaction Based On:

| | |
|---|---|
| Equipment Cost | $ 31,350.00 |
| Auction Admin Fees: | $ 3,775.00 |
| On-Site Property Insurance: | $ |
| Cargo Insurance (incl. taxes if any): | $ |
| Extended Service Contract: | $ |
| Sub-Total Before Taxes: | $ 35,125.00 |
| Sales/Use taxes: | $ 68.43 |
| Sales/Use Taxes: | $ |
| Sales/Use Taxes: | $ 322.44 |
| Total Equipment Invoice: | $ 35,515.87 |

### Cost of Transaction Based On (Cont'd):

| | |
|---|---|
| Total Equipment Invoice: | $ 35,515.87 |
| Less Downpayment | $ 0.00 |
| Balance Owing: | $ 35,515.87 |
| Loan Admin Fee: | $ 995.00 |
| Life Insurance: | $ |
| Disability Insurance: | $ |
| Original Principal Balance: | $ 36,510.87 |
| Interest Rate (% per annum): | 10.90 % |
| Cost of Credit | _____ % |

COPY VIEW

EFA244Q

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

COPY VIEW

| Schedule of Monthly Payment Terms: "Term" 48 months. | Commencement & Payment Due Dates: |
|---|---|
| 48 payments @ $941.87 | This Agreement will commence on the date you sign our Disbursement Authorization form or any other form acceptable to us ("Commencement Date"), authorizing us to pay Ritchie Bros. Auctioneers (America) Inc.  for the Equipment. |
|  | Your first Monthly Payment will be due and payable on the date that is 30 days after the Commencement Date and each other Monthly Payment will be due and payable on the same day of each succeeding month (each a **"Payment Date"**). |
| Original Term:          48 months | 8/30/2024 |

**IMPORTANT: Before you sign this Agreement, please read it carefully (including the additional Terms and Conditions contained in the pages following this page) because only those terms in writing are enforceable.  No other terms or oral promises not contained in this written Agreement may be legally enforced.  You may change the terms of this Agreement only by another written agreement signed by us.  By signing this Agreement, you agree to be legally bound by all of the Terms.  This Agreement is the complete and exclusive statement between you and us.  You certify that all the information contained in this Agreement and your Application is correct and complete. This Agreement is not binding on us until we sign it.  You agree that this Agreement is entered into by you for business purposes and not for personal, family of household purposes**

**Debtor:** QUICK SHIP LLC



By: **X** _CALEB HAWKINS_
    DocuSigned by:
    2F3F06BF29D34EE...

Caleb Hawkins                    Managing Member
Print Name & Title

Date: **X** 7/30/2024

This Agreement shall not become binding upon us until accepted in writing at our offices in Costa Mesa, CA by our authorized officer.

**Creditor:**

**Ameris Bank**

By:  DocuSigned by:
     _Maria Garcia_
     B573B763AAF0442...

Vice President
 8/1/2024
Date

THIS IS A COPY
This is a copy view. The authoritative Copy held by the designated custodian



## TERMS OF EQUIPMENT FINANCING AGREEMENT

Ameris Bank ("Creditor") and Debtor agree as follows:

1. **SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

2. **COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

3. **NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. ***THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.***

4. **PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number of days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above**. All Monthly Payment, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Monthly Payments shall be applied to the last Monthly Payment in reverse order until exhausted; provided that if there is a default, any payments under this Agreement may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

If this Agreement specifies that a Security Deposit is required, then to secure Debtor's timely and full performance of its Obligations under this Agreement, Debtor will deposit the amount so specified with Creditor. The Security Deposit will be non-interest bearing and may be commingled with other Creditor funds. Within fifteen (15) days after written notice to Debtor that all or any part of the Security Deposit has been used to satisfy any of the Obligations, Debtor will deposit with Creditor an amount sufficient to restore the Security Deposit to the required amount. Upon expiration or termination of this Agreement, if no default by Debtor under this Agreement exists, Creditor will return to Debtor any unused portion of the Security Deposit without interest.

Initials: **X**

Docusign Envelope ID: 938C665E-74A5-49B9-8343-3F72E6D77FAC

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

COPY VIEW

**5. NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE MONTHLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. NO WARRANTIES.   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. LOCATION; INSPECTION; USE.** Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carrie  hereunder and all manufacturer's instructions and warranty requirements.

**9. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debt r s all n t make any alterations, additions or improvements to an Item of Collateral which detract from its economic value o  func ional u lity. All a ditions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if rem val would impa  the Item's economic value or functional utility. Creditor's security interest shall cover all modifications,   cessions, additions to  nd replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without C editor's  rior written  nsent.

**10. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition  nd wo king or er. Debtor  hall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made prompt  by qu lified p rti   Debtor will cause each Item of Collateral for which a service contract is generally available to be covered  y such a  ntract w ich provides coverage typical as to property of the type involved and is issued by a competent servicing entity

**11. LOSS AND DAMAGE; CASUALTY VALUE**. In the eve   of loss, theft, destruc on or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice   reof  nd shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is deter  ne  by Credit  o be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under  n insuranc  policy car ied hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with infor ation ne ssary to perf ct Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value"   h Item whi h shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Ite   dis  unted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. PAYMENT OF OBL GATIONS:**  ayment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and  ny other amounts  wed und   this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this pa agraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authoriz  Credito  to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: **X** _____  Bank City, State: **X** _____

ABA Routing No: **X** _____  Account No: **X** _____

Business Name on Account: **X** _____

Street Address on Account: **X** _____  City, State on Account: **X** _____

Initials: **X** _____

THIS IS A COPY
This is a copy, view of the authoritative copy held by the designated custodian

BALBOA
Financial Services
A DIVISION OF AMERIS BANK

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Monthly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Monthly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE.** Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request.

**16. NONCOMPLIANCE FEE.** If Debtor fails to comply with the obligations set forth in Section 15, at Creditor's election, Creditor may assess a monthly fee of 0.50% of the Collateral Cost ("Noncompliance Fee"). This Noncompliance Fee is calculated with reference to additional risk, represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without the Required Insurance, and also constitutes additional profit for Creditor. Debtor will receive no insurance coverage by paying this Noncompliance Fee, and will not be released from any obligations. **Creditor does not sell or place insurance** Creditor will cease charging this Noncompliance Fee thirty (30) days after Debtor provides satisfactory proof of the Required Insurance.

**17. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligation hereunder, Creditor may perform such obligation, and Debtor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**18. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**19. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**20. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or

Initials: **X**

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**21. <u>LITIGATION EXPENSES.</u>** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 9, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**22. <u>ASSIGNMENT</u>.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**23. <u>PERSONAL PROPERTY.</u>** Debtor shall mark the Collateral or its location as required by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

**24. <u>LATE PAYMENT.</u>** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on each unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

**25. <u>SECURITY INTEREST RELEASE.</u>** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**26. <u>ADDITIONAL DOCUMENTS</u>.** Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**27. <u>NOTICES.</u>** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Ameris Bank, 575 Anton Blvd, Suite 1080, Costa Mesa CA 92626.

**28. <u>GENERAL</u>. This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party**

Initials: **X**

THIS IS A COPY<br>View Copy Not Authoritative. Copy held<br>by the designated custodian

Docusign Envelope ID: 938C665E-74A5-49B9-8343-3F72E6D77FAC

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

29. **DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

30. **GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

31. **CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement or an action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

32. **COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. An alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as the term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR)<br>AMERIS BANK<br>575 Anton Blvd. Suite 1080<br>Costa Mesa, CA 92626 | (DEBTOR)<br>QUICK SHIP LLC<br>785 Frebis Ave<br>Columbus, OH, 43206, USA |
|---|---|
| DocuSigned by:<br>By: *Maria Garcia*<br>B573B763AAF0442...<br><br>Vice President<br><br>Date: 8/1/2024 | DocuSigned by:<br>By: X CALEB HAWKINS<br>2F3F06BF29D34EE...<br><br>Name: Caleb Hawkins<br><br>Title: Managing Member<br><br>Date: X 7/30/2024     Home Phone: X ▮▮▮▮▮ |

EFA244Q

Docusign Envelope ID: 938G665E-74A5-49B9-8243-3F72E6D77FAC

**RITCHIE BROS.**
Financial Services

THIS IS A COPY

BALBOA CAPITAL
A DIVISION OF AMERIS BANK



Attn: Funding Supervisor

## SUPPLIER PAYMENT DIRECTIVE

Re:      Equipment Financing Agreement ("EFA") 283029-007 between Ameris Bank and QUICK SHIP LLC ("DEBTOR")

We, the undersigned, hereby acknowledge that the Equipment described in the EFA referenced above has not been delivered and/or accepted by us and that, **by this letter, we are instructing you to PREFUND the Supplier listed below.** We further recognize and understand that, as a condition precedent for you to PREFUND the Supplier prior to delivery and/or acceptance of the Equipment described in the EFA above, we must ratify and affirm the terms and conditions contained in the EFA, and the Personal Guaranty. **WE AFFIRM THAT WE HAVE READ AND FULLY UNDERSTAND** the terms and conditions contained in the EFA, and the Personal Guaranty. **Any questions we had regarding those terms were fully explained and answered by legal counsel of our choice in advance of signing the aforementioned agreements and requesting this PRE-DELIVERY DISBURSEMENT.**

By signing below, we specifically authorize and request that Ameris Bank and/or its Assignee disburse proceeds as outlined below. We agree that all or some of the Equipment has not been delivered, installed and/or accepted and that all the terms and conditions of the EFA, and Personal Guaranty remain in full force and effect and that we are unconditionally bound to repay all amounts advanced under the EFA.

A facsimile or electronic copy of our signature shall be sufficient for Ameris Bank reliance upon this document and the unfettered enforcement of this document, the EFA, and Personal Guaranty as an original signature.

| Supplier | Amount |
|---|---|
| Ritchie Bros. Auctioneers (America) Inc. | $35,51_87 |
|  | $_00 |
|  | $0_0 |
| Ritchie Bros. Financial Services, Ltd. | $995_00 |
| Ritchie Bros. Financial Services, Ltd. | $ |
| Ritchie Bros. Financial Services, Ltd. | $ |

| | |
|---|---|
| **Signature** X  *CALEB HAWKINS*  2F3F06BF29D34EE... | **Date** X 7/30/2024 |

We recognize that Payment on or behalf the Supplier does not obligate you to confirm the application of the Amounts thereof by the recipient(s).
We authorize Ameris Bank to amend any documents to reflect the correct descriptions and serial numbers of all items of Equipment wherever necessary.

Billing Contact Name:   Caleb Hawkins        Phone Number:  6144257417        Email:   c.hawkins@quickshipdelivery.com

Very truly yours,
Debtor Name: QUICK SHIP LLC

Signature:  X *CALEB HAWKINS*  2F3F06BF29D34EE...        Date:   X 7/30/2024

Name:   Caleb Hawkins        Title:   Managing Member

Signature:  X *CALEB HAWKINS*  2F3F06BF29D34EE...        Signature:   X

Name:   Caleb Hawkins, Guarantor        Name:   , Guarantor

ECEFA843

COPY VIEW

Docusign Envelope ID: 938C665E-74A5-49B9-8343-3F72E6D77FAC



THIS IS A COPY

This is a copy view. Not the authoritative Copy held by the designated custodian



**Exhibit A**
Agreement #: 283029-007

| Quantity | ModelYear | Make | Model | Serial Number | Equipment Cost |
|---|---|---|---|---|---|
| 1 | 2018 | Kenworth | T680 4x2 S/A Day Cab Truck Tractor | 1XKYAP8X8JJ214342 | $15,500.00 |
| 1 | 2017 | Stoughton | ZGPVW-535T-S-C 53 ft x 102 in T/A Van Trailer | 1DW1A5328HB737047 | $6,750.00 |
| 1 | 2015 | Stoughton | ZGPVW-353T-S-C 53 ft x 102 in T/A Van Trailer | 1DW1A532XFB577587 | $4,500.00 |
| 1 | 2017 | Stoughton | 53 ft x 102 in T/A Van Trailer | 1DW1A5323HB704974 | $3,750.00 |
| 1 | 2005 | Mitsubishi | FGC25N 5000 lb Cushion Tire Forklift | AF82F02564 | $850.00 |
| | | | | | $0 |
| | | | | | $0.00 |
| | | | | | $.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| Equipment Location: 785 Frebis Ave, Columbus  OH, 4320    USA | | | | | |

COPY VIEW

**DEBTOR**

**QUICK SHIP LLC**

Signature

X *Caleb Hawkins*
DocuSigned by:
2F3F06BF29D34EE...

Print Name
Caleb Hawkins

Date
X 7/30/2024

Title
Managing Member

THIS IS A COPY

This is a copy ... Authoritative Copy held
by the designated Custodian.



**CREDITOR: AMERIS BANK**

Equipment Financing Agreement Number: 283029-007

# VEHICLE ADDENDUM – I-A

### ADDENDUM TO EQUIPMENT FINANCING AGREEMENT OF EQUIPMENT DATED ___7/30/2024___

### THE TERM "VEHICLE" AS USED HEREIN SHALL BE DEEMED TO REFER
### TO AN ITEM OF EQUIPMENT AS DEFINED IN THE EQUIPMENT FINANCING AGREEMENT

<u>HEAVY VEHICLE USE TAX (Federal Highway Use Tax)</u>: Debtor will file all returns and pay all (Federal) Heavy Vehicle Use Tax, which may be assessed or due on each Vehicle and Debtor agrees to indemnify Creditor for such taxes. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

<u>OBLIGATION TO PAY MISCELLANEOUS CHARGES</u>: Debtor agrees to pay all storage charges, parking charges and fines. Debtor will pay any fees (including Vehicle registration and inspection fees) or taxes which may be imposed with respect to each Vehicle by any governmental authority. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

<u>TITLING AND REGISTRATION</u>: Debtor is the owner of the Equipment and Debtor guarantees that physical titling of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Equipment Financing Agreement shall bear license plates and the title thereto shall be registered in the name of Debtor. Annual registration and license fees shall be paid by Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt. This will be provided within 30 days of when Debtor receives it from the titling authority. If Debtor fails to do so, Debtor will be in default of this Agreement. Debtor further agrees to pay a month to month unobtained titling fee we have not received the correct transferred title in our office and agree to indemnify Creditor from any damage or loss we incur from Debtor's failure.

X_____ (initial) Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor also grants Creditor security interest in the equipment if this agreement is deemed a secured transaction and Debtor authorizes Creditor to record a UCC-1.

<u>INSURANCE</u>: Debtor shall procure and maintain in full force and effect at all times at Debtor's expense, with a responsible insurance company acceptable to Creditor, insurance coverage for the maximum insurable value of the equipment insuring Debtor and Creditor, as their interests may appear, against liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the equipment, with minimum coverage per occurrence as follows:

Minimum limits for each vehicle to be maintained by Debtor:

| | | | |
|---|---|---|---|
| Bodily injury liability per individual | $500,000.00 | Fire, Theft and Comprehensive | Full Value |
| Bodily injury liability per accident | 500,000.00 | Collision Value Deductible (deductible part to be paid by Debtor) | |
| Property damage liability | $250,000.00 | | |

**OR** Combined Single Limits          $750,000.00

Such continuous insurance coverage shall be provided for the period from delivery of the first item of equipment to Debtor to the date of termination of this Equipment Financing Agreement. Debtor shall provide Creditor copies of the insurance policies or other evidence of the maintenance of such insurance. Creditor **must** be named on the policy as **"additional insured"** and **"loss payee"**.

The following shall constitute an additional Event of Default under the Equipment Financing Agreement: "expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Equipment Financing Agreement".

EXCEPT IN THE EVENT OF DIRECT CONFLICT BETWEEN THIS ADDENDUM AND THE ABOVE REFERENCED EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SUPPLEMENT SAID EQUIPMENT FINANCING AGREEMENT AND SHALL NOT BE DEEMED TO MODIFY, REPLACE, OR CANCEL ANY PROVISION OF SAID EQUIPMENT FINANCING AGREEMENT, IN THE EVENT OF CONFLICT BETWEEN THIS ADDENDUM AND SAID EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

| **CREDITOR:** | **DEBTOR:** |
|---|---|
| **AMERIS BANK** | **QUICK SHIP LLC** |
| By: *Maria Garcia* | By: X *CALEB HAWKINS* |
| B573B763AAF0442... | 2F3F06BF29D34EE... |
| Title: Vice President | Name: Caleb Hawkins |
| | Title: Managing Member |
| Date: 8/1/2024 | Date: X 7/30/2024 |

EFA255C

# rb RITCHIE BROS.
### Auctioneers

**Auction number:** 2024433
**Auction date:** 2024/07/26

# INVOICE

\# 202443355489
Date: 2024-07-26

Ritchie Bros Auctioneers (America) Inc
4000 Pine Lake Road
Lincoln, NE, USA 68516
Tel: 1 (402) 421-3631  Fax: 1 (402) 421-1738
www.rbauction.com

**Auction Event:**   Yellow Corp G L Transit Hub Ev, OH, USA
200 Ritchie Dr
South Vienna, OH  USA  45369
Tel: 1 (937) 568-9500  Fax: 1 (937) 568-9504

**Sold to:**
SOLD TO
/ SHIP TO:
QUICK SHIP LLC
785 FREBIS AVE
COLUMBUS, OH USA 43206

**Buyer number:**   **55489**
**Contact name:**   CALEB  HAWKINS
**Customer number:**   12783893
Tel: 1 (614) 425-7417    Fax:

ST 30/7/2024

| Lot No. | Description | Price | Tax1 | Tax2 | Tax3 | Total USD |
|---|---|---|---|---|---|---|
| **5035** | 2005 Mitsubishi FGC25N 5000 lb Cushion Tire Forklift<br>s/n: AF82F02564<br>** ECCN: EAR99<br>LOCATION: SOUTH BEND, IN | 850.00 | 59.50 | | | 909.50 |
| | Transaction Fee (On Lots  <= 5,000 ) | 127.50 | 8.93 | | | 136.43 |
| | **Sub Totals** | **977.50** | **68.43** | | | **1,045.93** |
| **5232** | 2017 Stoughton 53 ft x 102 in T/A Van Trailer<br>s/n: 1DW1A5323HB704974<br>** ECCN: EAR99<br>LOCATION: JOLIET, IL | 3,750.00 | | | | 3,750.00* |
| | Transaction Fee (On Lots  <= 5,000 ) | 562.50 | | | 49.22 | 611.72 |
| | Doc Admin Fees | 115.00 | | | 10.06 | 125.06 |
| | **Sub Totals** | **4,427.50** | | | **59.28** | **4,486.78** |
| **5245** | 2017 Stoughton ZGPVW-535T-S-C 53 ft x 102 in T/A Van Trailer<br>s/n: 1DW1A5328HB737047<br>** ECCN: EAR99<br>LOCATION: ROCKFORD, IL | 6,750.00 | | | | 6,750.00* |
| | Transaction Fee (On Lots  <= 12,000 ) | 750.00 | | | 65.63 | 815.63 |
| | Doc Admin Fees | 115.00 | | | 10.06 | 125.06 |
| | **Sub Totals** | **7,615.00** | | | **75.69** | **7,690.69** |
| **5258** | 2015 Stoughton ZGPVW-353T-S-C 53 ft x 102 in T/A Van Trailer<br>s/n: 1DW1A532XFB577587<br>** ECCN: EAR99<br>LOCATION: JOLIET, IL | 4,500.00 | | | | 4,500.00* |
| | Transaction Fee (On Lots  <= 5,000 ) | 675.00 | | | 59.06 | 734.06 |
| | Doc Admin Fees | 115.00 | | | 10.06 | 125.06 |
| | **Sub Totals** | **5,290.00** | | | **69.12** | **5,359.12** |
| **5939** | 2018 Kenworth T680 4x2 S/A Day Cab Truck Tractor<br>s/n: 1XKYAP8X8JJ214342  Engine Number: Y148291<br>** ECCN: 9A990<br>LOCATION: CHICAGO HEIGHTS, IL | 15,500.00 | | | | 15,500.00* |
| | Transaction Fee (On Lots  > 12,000 ) | 1,200.00 | | | 108.00 | 1,308.00 |
| | Doc Admin Fees | 115.00 | | | 10.35 | 125.35 |
| | **Sub Totals** | **16,815.00** | | | **118.35** | **16,933.35** |

**$17.51 per day will be charged on overdue accounts.**

Invoice in accordance with bidder registration agreement. Every item is sold "as is" and "where is" as per our Auction Terms of sale. Purchases must be paid in full within 7 days of the end of the auction. No removals until paid in full. Overdue accounts - interest charged per our Auction Terms of sale. Please pay from this invoice - we do not issue statements.
Auctioneers are not the principals in this sale but are acting solely as agents.

** *If the buyer intends to ship the item out of the United States, the buyer is responsible for compliance with U.S. export regulations, including making an automated export system or other filing with the U.S. government, and is to contact Ritchie Bros. to receive information needed for any such filing. ECCNs, where available, have been provided for each purchased item as shown above.*

# **rb RITCHIE BROS.**
Auctioneers

**INVOICE**

| | |
|---|---|
| Auction number: | 2024433 |
| Auction date: | 2024/07/26 |

\# 202443355489

Date: 2024-07-26

Ritchie Bros Auctioneers (America) Inc
4000 Pine Lake Road
Lincoln, NE, USA 68516
Tel: 1 (402) 421-3631  Fax: 1 (402) 421-1738
www.rbauction.com

**Auction Event:**   **Yellow Corp G L Transit Hub Ev, OH, USA**
200 Ritchie Dr
South Vienna, OH  USA  45369
Tel: 1 (937) 568-9500  Fax: 1 (937) 568-9504

Sold to:   QUICK SHIP LLC
SOLD TO
/ SHIP TO:   785 FREBIS AVE
   COLUMBUS, OH USA 43206

**Buyer number:**   **55489**
**Contact name:**   CALEB  HAWKINS
**Customer number:**   12783893
Tel: 1 (614) 425-7417   Fax:

ST 30/7/2024

| Lot No. | Description | Price | Tax1 | Tax2 | Tax3 | Total USD |
|---|---|---|---|---|---|---|

**Payment options:**

**- To pay in US funds, please wire transfer to:**

Bank of America
100 W 33rd Street, New York, NY 10001
Credit To:  Ritchie Bros Auctioneers (America) Inc
Routing:  026 009 593 / Swift:  BOFAUS3N
Account:  485005357315
Reference Invoice #:202443355489

**- Other approved payment forms can be directed to:**

Ritchie Bros Auctioneers (America) Inc
200 Ritchie Dr
South Vienna, OH 45369  USA

| | |
|---|---|
| Total Purchase: | 35,125.00 |
| Tax1 (Equipment) | 68.43 |
| Tax2 (Motor Vehicle) | 0.00 |
| Tax3 (Transaction Fee) | 322.44 |
| **TOTAL:** | **35,515.87** |
| Amount Paid: | 0.00 |
| Balance Owing: | **35,515.87** |

**$17.51 per day will be charged on overdue accounts.**

Invoice in accordance with bidder registration agreement. Every item is sold "as is" and "where is" as per our Auction Terms of sale. Purchases must be paid in full within 7 days of the end of the auction. No removals until paid in full. Overdue accounts - interest charged per our Auction Terms of sale. Please pay from this invoice - we do not issue statements. Auctioneers are not the principals in this sale but are acting solely as agents.

**\*\*** *If the buyer intends to ship the item out of the United States, the buyer is responsible for compliance with U.S. export regulations, including making an automated export system or other filing with the U.S. government, and is to contact Ritchie Bros. to receive information needed for any such filing. ECCNs, where available, have been provided for each purchased item as shown above.*

\USAen

# EXHIBIT "F"

Docusign Envelope ID: 938C665E-74A5-49B9-8243-3F72E6D77FAC

THIS IS A COPY
This is a true view of the Authoritative Copy held
by the designated custodian



# PERSONAL GUARANTY

### Equipment Financing Agreement # 283029-007

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **AMERIS BANK,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU SUBMIT TO THE EXCLUSIVE AND MANDATORY JURISDICTION OF CALIFORNIA AND AGREE THAT THE CALIFORNIA STATE COURTS AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION, SHALL HAVE EXCLUSIVE AND MANDATORY JURISDICTION OVER ANY ACTION OR PROCEEDING TO ENFORCE THIS GUARANTY OR ANY ACTION OR PROCEEDING AIRISING OUT OF THIS GUARANTY. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

X _CALEB HAWKINS_
DocuSigned by:
2F3F06BF29D34EE...

**Caleb Hawkins**                                  X  7/30/2024
**Name**                                           **Date**

▌▌▌▌▌▌▌▌▌▌▌▌▌

**Home Street Address, City, State, Zip Code**

▌▌▌                                               ▌▌▌

**Social Security Number**                         **Phone Number**

EFA251

# EXHIBIT "G"

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 40 of 51    Page ID #:57

**Agreement #: 283029-010**

## EQUIPMENT FINANCING AGREEMENT

### Debtor Information:

| | |
|---|---|
| Debtor Name: | QUICK SHIP LLC |
| Billing Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Physical Address: | 785 Frebis Ave, Columbus, OH, 43206, USA |
| Phone Number: | 6144257417 |
| State of Formation: | OH |
| Contact Person: | Caleb Hawkins |
| Contact Email: | c.hawkins@quickshipdelivery.com |
| Federal Tax ID: | X ▆▆▆▆▆ |

**Commercial Transaction/Business Use Only**

**Creditor:** Ameris Bank

575 Anton Blvd, Suite 1080
Costa Mesa, CA 92626

Phone Number: 8553317237

Contact Phone: Customer Service

Contact Email: rbrar@rbfinance.com

This is an Equipment Financing Agreement ("**Agreement**"). "**Creditor**" means Ameris Bank and is also referred to as "**we**", "**us**" and "**our**". "**Debtor**" means the entity or individual identified above and is also referred to as "**you**" and "**your**".

### Schedule of Collateral:

| Qty | Model Year | Make | Model | Serial No. | Equipment Cost |
|---|---|---|---|---|---|
| 1 | 2013 | MAC | TNAR48F-2013 Flatbed Trailer | 5MAPA4824DA024934 | $28,513.00 |

Equipment Location: 785 Frebis Ave, Columbus, OH, 43206, USA

| | $0.00 |
|---|---|

Equipment Location:

| | $0.00 |
|---|---|

Equipment Location:

| | $28513 |
|---|---|

### Cost of Transaction Based On:

| | |
|---|---|
| Equipment Cost: | $ 28,513.00 |
| Auction Admin Fees: | $ 2,195.00 |
| On-Site Property Insurance: | $ |
| Cargo Insurance (incl. taxes if any): | $ |
| Extended Service Contract: | $ |
| Sub-Total Before Taxes: | $ 30,708.00 |
| Sales/Use taxes: | $ 0.00 |
| Sales/Use Taxes: | $ |
| Sales/Use Taxes: | $ |
| Total Equipment Invoice: | $ 30,708.00 |

### Cost of Transaction Based On (Cont'd):

| | |
|---|---|
| Total Equipment Invoice: | $ 30,708.00 |
| Less Downpayment | $ 0.00 |
| Balance Owing: | $ 30,708.00 |
| Loan Admin Fee: | $ 1,445.00 |
| Life Insurance: | $ |
| Disability Insurance: | $ |
| Original Principal Balance: | $ 32,153.00 |
| Interest Rate (% per annum): | 12.50 % |
| Cost of Credit | _____ % |

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**Schedule of Monthly Payment Terms: "Term" 48 months.**

48 payments @ $854.92

Original Term:                48 months

**Commencement & Payment Due Dates:**

This Agreement will commence on the date you sign our Disbursement Authorization form or any other form acceptable to us ("Commencement Date"), authorizing us to pay IRON PLANET INC.   for the Equipment.

Your first Monthly Payment will be due and payable on the date that is 30 days after the Commencement Date and each other Monthly Payment will be due and payable on the same day of each succeeding month (each a **"Payment Date"**).

12/05/2025

**IMPORTANT: Before you sign this Agreement, please read it carefully (including the additional Terms and Conditions contained in the pages following this page) because only those terms in writing are enforceable. No other terms or oral promises not contained in this written Agreement may be legally enforced. You may change the terms of this Agreement only by another written agreement signed by us. By signing this Agreement, you agree to be legally bound by all of the Terms. This Agreement is the complete and exclusive statement between you and us. You certify that all the information contained in this Agreement and your Application is correct and complete. This Agreement is not binding on us until we sign it. You agree that this Agreement is entered into by you for business purposes and not for personal, family or household purposes.**

**Debtor:** QUICK SHIP LLC



By: **X** CALEB HAWKINS
2F3F06BF29D34EE...

Caleb Hawkins                        Managing Member
Print Name & Title

Date: **X**  10/31/2025

This Agreement shall not become binding upon us until accepted in writing at our offices in Costa Mesa, CA by our authorized officer.

**Creditor:**

**Ameris Bank**

By: Lauren Schott
B573B763AAF0442...

Vice President
 11/6/2025
Date

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 42 of 51    Page ID #:59

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Ameris Bank ("Creditor") and Debtor agree as follows:

1. **SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

2. **COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

3. **NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. *THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.*

4. **PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Monthly Payments, shall be applied to the last Monthly Payment in reverse order until exhausted; provided that if there is a default, any payments under this Agreement may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

If this Agreement specifies that a Security Deposit is required, then to secure Debtor's timely and full performance of its Obligations under this Agreement, Debtor will deposit the amount so specified with Creditor. The Security Deposit will be non-interest bearing and may be commingled with other Creditor funds. Within fifteen (15) days after written notice to Debtor that all or any part of the Security Deposit has been used to satisfy any of the Obligations, Debtor will deposit with Creditor an amount sufficient to restore the Security Deposit to the required amount. Upon expiration or termination of this Agreement, if no default by Debtor under this Agreement exists, Creditor will return to Debtor any unused portion of the Security Deposit without interest.

Initials: **X** ⌐CH⌐

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 43 of 51    Page ID #:60

**5. NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE MONTHLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. NO WARRANTIES.   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. LOCATION; INSPECTION; USE**. Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

**9. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

**10. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity,

**11. LOSS AND DAMAGE; CASUALTY VALUE**. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. PAYMENT OF OBLIGATIONS;** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: **X** _____    Bank City, State: **X** _____

ABA Routing No: **X** _____    Account No: **X** _____

Business Name on Account: **X** _____

Street Address on Account: **X** _____    City, State on Account: **X** _____

Initials: **X** _____

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 44 of 51    Page ID #:61

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Monthly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Monthly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE.** Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request.

**16. NONCOMPLIANCE FEE.** If Debtor fails to comply with the obligations set forth in Section 15, at Creditor's election, Creditor may assess a monthly fee of 0.50% of the Collateral Cost ("Noncompliance Fee"). This Noncompliance Fee is calculated with reference to additional risk, represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without the Required Insurance, and also constitutes additional profit for Creditor. Debtor will receive no insurance coverage by paying this Noncompliance Fee, and will not be released from any obligations. **Creditor does not sell or place insurance**. Creditor will cease charging this Noncompliance Fee thirty (30) days after Debtor provides satisfactory proof of the Required Insurance.

**17. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**18. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**19. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**20. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or

Initials: **X**

EFA244Q

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

21. **LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

22. **ASSIGNMENT**. Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

23. **PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

24. **LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

25. **SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

26. **ADDITIONAL DOCUMENTS**. Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

27. **NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Ameris Bank, 575 Anton Blvd, Suite 1080, Costa Mesa CA 92626.

28. **GENERAL**. **This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party**

Initials: **X**

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 46 of 51    Page ID #:63

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

29. **DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

30. **GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

31. **CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

32. **COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR) AMERIS BANK 575 Anton Blvd. Suite 1080 Costa Mesa, CA 92626 | (DEBTOR) QUICK SHIP LLC 785 Frebis Ave Columbus, OH, 43206, USA |
|---|---|
| DocuSigned by: By: _Lauren Schott_ B573B763AAF0442... | DocuSigned by: By: X _CALEB HAWKINS_ 2F3F06BF29D34EE... |
| Vice President | Name: Caleb Hawkins |
| Date: 11/6/2025 | Title: Managing Member |
| | Date: X 10/31/2025    Home Phone: X ▓▓▓▓▓ |

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 47 of 51    Page ID #:64

**RITCHIE BROS.**
Financial Services

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

Attn: Funding Supervisor

## SUPPLIER PAYMENT DIRECTIVE

Re:    Equipment Financing Agreement ("EFA") 283029-010 between Ameris Bank and QUICK SHIP LLC ("DEBTOR")

We, the undersigned, hereby acknowledge that the Equipment described in the EFA referenced above has not been delivered and/or accepted by us and that, **by this letter, we are instructing you to PREFUND the Supplier listed below.** We further recognize and understand that, as a condition precedent for you to PREFUND the Supplier prior to delivery and/or acceptance of the Equipment described in the EFA above, we must ratify and affirm the terms and conditions contained in the EFA, and the Personal Guaranty. **WE AFFIRM THAT WE HAVE READ AND FULLY UNDERSTAND** the terms and conditions contained in the EFA, and the Personal Guaranty. **Any questions we had regarding those terms were fully explained and answered by legal counsel of our choice in advance of signing the aforementioned agreements and requesting this PRE-DELIVERY DISBURSEMENT.**

By signing below, we specifically authorize and request that Ameris Bank and/or its Assignee disburse proceeds as outlined below. We agree that all or some of the Equipment has not been delivered, installed and/or accepted and that all the terms and conditions of the EFA, and Personal Guaranty remain in full force and effect and that we are unconditionally bound to re-pay all amounts advanced under the EFA.

A facsimile or electronic copy of our signature shall be sufficient for Ameris Bank reliance upon this document and the unfettered enforcement of this document, the EFA, and Personal Guaranty as an original signature.

| Supplier | Amount |
|---|---|
| IRON PLANET INC. | $30,708.00 |
|  | $0.00 |
|  | $0.00 |
| Ritchie Bros. Financial Services, Ltd. | $1,445.00 |
| Ritchie Bros. Financial Services, Ltd. | $ |
| Ritchie Bros. Financial Services, Ltd. | $ |

**Signature** X *CALEB HAWKINS*
DocuSigned by:
2F3F06BF29D34EE...

**Date** X 10/31/2025

We recognize that Payment on our behalf to the Supplier does not obligate you to confirm the application of the Amounts thereof by the recipient(s).
We authorize Ameris Bank to amend any documents to reflect the correct descriptions and serial numbers of all items of Equipment wherever necessary.

| Billing Contact Name: | Caleb Hawkins | Phone Number: | 6144257417 | Email: | c.hawkins@quickshipdelivery.com |
|---|---|---|---|---|---|

Very truly yours,
Debtor Name: QUICK SHIP LLC

Signature: X *CALEB HAWKINS*
DocuSigned by:
2F3F06BF29D34EE...

Date: X 10/31/2025

Name: Caleb Hawkins

Title: Managing Member

Signature: X *CALEB HAWKINS*
DocuSigned by:
2F3F06BF29D34EE...

Signature: X

Name: Caleb Hawkins, Guarantor

Name: , Guarantor

ECEFA843

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6

**rb RITCHIE BROS.**
Financial Services

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

CREDITOR:  AMERIS BANK

Equipment Financing Agreement Number:  283029-010

## VEHICLE ADDENDUM – I-A

### ADDENDUM TO EQUIPMENT FINANCING AGREEMENT OF EQUIPMENT DATED _11/6/2025_

### THE TERM "VEHICLE" AS USED HEREIN SHALL BE DEEMED TO REFER
### TO AN ITEM OF EQUIPMENT AS DEFINED IN THE EQUIPMENT FINANCING AGREEMENT

HEAVY VEHICLE USE TAX (Federal Highway Use Tax): Debtor will file all returns and pay all (Federal) Heavy Vehicle Use Tax, which may be assessed or due on each Vehicle and Debtor agrees to indemnify Creditor for such taxes. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

OBLIGATION TO PAY MISCELLANEOUS CHARGES: Debtor agrees to pay all storage charges, parking charges and fines. Debtor will pay any fees (including Vehicle registration and inspection fees) or taxes which may be imposed with respect to each Vehicle by any governmental authority. In the event of default any expenses incurred will be included as Equipment Financing Agreement damages and due from the Debtor.

TITLING AND REGISTRATION: Debtor is the owner of the Equipment and Debtor guarantees that physical titling of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Equipment Financing Agreement shall bear license plates and the title thereto shall be registered in the name of Debtor. Annual registration and license fees shall be paid by Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt. This will be provided within 30 days of when Debtor receives it from the titling authority. If Debtor fails to do so, Debtor will be in default of this Agreement. Debtor further agrees to pay a month to month unobtained titling fee if we have not received the correct transferred title in our office and agree to indemnify Creditor from any damage or loss we incur from Debtor's failure.

X_____ (initial) Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling, plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within in the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor also grants Creditor security interest in the equipment if this agreement is deemed a secured transaction and Debtor authorizes Creditor to record a UCC-1.

INSURANCE: Debtor shall procure and maintain in full force and effect at all times, at Debtor's expense, with a responsible insurance company acceptable to Creditor, insurance coverage for the maximum insurable value of the equipment insuring Debtor and Creditor, as their interests may appear, against liability for death, bodily injury and property damage resulting from ownership, maintenance, use or operation of the equipment, with minimum coverage per occurrence as follows:

Minimum limits for each vehicle to be maintained by Debtor:

| | | | |
|---|---|---|---|
| Bodily injury liability per individual | $500,000.00 | Fire, Theft and Comprehensive | Full Value |
| Bodily injury liability per accident | $500,000.00 | Collision Value Deductible (deductible part to be paid by Debtor) | |
| Property damage liability | $250,000.00 | | |
| **OR** Combined Single Limits | $750,000.00 | | |

Such continuous insurance coverage shall be provided for the period from delivery of the first item of equipment to Debtor to the date of termination of this Equipment Financing Agreement. Debtor shall provide Creditor copies of the insurance policies or other evidence of the maintenance of such insurance. Creditor **must** be named on the policy as **"additional insured"** and **"loss payee"**.

The following shall constitute an additional Event of Default under the Equipment Financing Agreement: "expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Equipment Financing Agreement".

EXCEPT IN THE EVENT OF DIRECT CONFLICT BETWEEN THIS ADDENDUM AND THE ABOVE REFERENCED EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SUPPLEMENT SAID EQUIPMENT FINANCING AGREEMENT AND SHALL NOT BE DEEMED TO MODIFY, REPLACE, OR CANCEL ANY PROVISION OF SAID EQUIPMENT FINANCING AGREEMENT, IN THE EVENT OF CONFLICT BETWEEN THIS ADDENDUM AND SAID EQUIPMENT FINANCING AGREEMENT, THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

**CREDITOR:**
**AMERIS BANK**

By: _Lauren Schott_
—B573B763AAF0442...

Title: Vice President

Date:  **11/6/2025**

**DEBTOR:**
**QUICK SHIP LLC**

By: X _CALEB HAWKINS_
—2F3F06BF29D34EE...

Name: Caleb Hawkins

Title: Managing Member

Date: X  **10/31/2025**

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:12 AM.    EFA255C

Docusign Envelope ID: 8B2S6D25-37D4-47B1-87A1-8AFES23260E6



**RITCHIE BROS.**

4000 Pine Lake Rd
Lincoln, NE 68516, USA
Phone: (800) 211-3983
Fax: (833) 675-0619
www.ironplanet.com

# Invoice

| Settlement Date | Invoice # |
|---|---|
| 11/6/25 | 828240-14318248 |

## Sold To

~~Caleb Hawkins~~
Quick Ship LLC
785 Frebis Ave
Columbus, OH 43206
USA

## Delivery Address

~~Caleb Hawkins~~
Quick Ship LLC
785 Frebis Ave
Columbus, OH 43206
USA

RB, 11/4/2025

| | User ID | Auction Date |
|---|---|---|
| | 8165137 | 10/30/25 |

| Item # | Description | Amount |
|---|---|---|
| 14318248 | **2013 MAC TNAR48F-2013 Flatbed Trailer  S/N: 5MAPA4824DA024934**<br>Location: Baltimore, OH 431058502, USA<br>(You must call at least 24 hours in advance to schedule pickup) | US $28,513.00 |
| | **Transaction Fee** | US $2,195.00 |
| | **Sales Tax Exempt for Motor Vehicles** | US $0.00 |
| | **Total Due by 11/6/25:** | **US $30,708.00** |

**Note:** All dates are in Pacific Standard Time.  All prices are in USD

---

⚠ PLEASE NOTE NEW WIRING INFORMATION

**Payment Instructions**
Wire Transfer within 7 days to avoid late fees:

Beneficiary: **IronPlanet**
Bank: **Wells Fargo Bank (San Francisco, California)**
SWFT Address: **WFBIUS6S**
ABA: **121000248**
Account: **4705117323**

Please reference the IronPlanet Item Number, **828240-14318248**

# EXHIBIT "H"

Docusign Envelope ID: 8B266D25-37D4-47B1-87A1-8AFEC23260E6

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01142-ADS    Document 1-1    Filed 05/11/26    Page 51 of 51 Page ID #:68

Financial Services

BALBOA CAPITAL
A DIVISION OF AMERIS BANK

# PERSONAL GUARANTY

### Equipment Financing Agreement # 283029-010

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **AMERIS BANK,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU SUBMIT TO THE EXCLUSIVE AND MANDATORY JURISDICTION OF CALIFORNIA AND AGREE THAT THE CALIFORNIA STATE COURTS AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION, SHALL HAVE EXCLUSIVE AND MANDATORY JURISDICTION OVER ANY ACTION OR PROCEEDING TO ENFORCE THIS GUARANTY OR ANY ACTION OR PROCEEDING AIRISING OUT OF THIS GUARANTY. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

X _CALEB HAWKINS_
DocuSigned by:
2F3F06BF29D34EE...

| | |
|---|---|
| Caleb Hawkins | X  10/31/2025 |
| **Name** | **Date** |
| ▮▮▮▮▮ | |
| **Home Street Address, City, State, Zip Code** | |
| ▮▮▮▮ | ▮▮▮▮ |
| **Social Security Number** | **Phone Number** |

EFA251

The original document is owned by Balboa Capital Corporation and this copy was created on Nov 06, 2025 07:32:13 AM.